STEPHEN MERRITT, Appellant, *v.* NATHAN MERRITT, Appellee.

APPEAL FROM LA SALLE. ·

The indorser of a note, without recourse to himself, is a competent witness to prove a promise of the maker of a note so as to take it out of the statute of limitations.

A, and B, being brothers, inheriting from their father, B, sold his inheritance to A. The father, by his will, declared that any indebtedness of his sons to him, should be in reduction of his bequests ; the father, at his death, held a note against B, assigned to him by C, another brother. Held that B, having sold his interest in the estate to A, was bound to pay to A, the amount of the note B, had given to C, and which C, had assigned to the father.

The common law of another State may be proved by parol.

It is objectionable that instructions should be drawn at great length, and have " injected " into them an argument of the case. They should be concise, and briefly present the point of law, on which the party relies.

THIS was an action of debt on a promissory note, originally commenced by appellant against appellee in the Circuit Court of La Salle county, by attachment, at the November term, A. D. 1854.

The declaration contains three counts. The first count sets out that heretofore, to wit, on the 11th day of October, 1841, at, etc., by his certain promissory note of that date, the defendant

Merritt v. Merritt.

then and there, for value received, promised the plaintiff to pay him on the 3rd day of November, 1842, nine hundred dollars; yet, though often requested, etc.

The second count varies from the first only in stating the consideration for said note to be the plaintiff's quit-claim deed to his father's estate.

The third count sets out a copy of the note sued on in *hæc verba*:

$900.

For value received I promise to pay Stephen Merritt, on the third day of November, one thousand eight hundred and forty-two, nine hundred dollars, without defalcation, being in consideration of Stephen Merritt's quit-claim to his father's estate.                                                    NATHAN MERRITT.

*Peru, October* 11*th*, 1841.

To which defendant pleads,

1st.   Payment.

2nd.   Statute of limitations (five years).

3rd.   Defendant offered a set-off, a note under the hand and seal of the plaintiff, dated August 1st, 1836, payable to Daniel Merritt or bearer, for $967, with interest at seven per centum per annum, which note defendant avers, was then and there indorsed by said Daniel Merritt to him.   He therefore offers to set-off so much of said note as will satisfy plaintiff's claim, and claims judgment for the balance.

4th.   The defendant's fourth plea is like his third, with the additional averment of a promise by the plaintiff to said Daniel to pay said note within sixteen years next before the commencement of this suit; and that said note was indorsed as aforesaid after said subsequent promise.

5th.   The general issue.

Plaintiff, for replication, traverses defendant's first plea, joins issue on his fifth plea, and demurs to his second, third and fourth, which demurrer was sustained.

Defendant then took leave to amend his third plea, and abides by the demurrer as to the other pleas.   The third plea, as amended, is set out above.

By leave of the court, plaintiff filed several replications to defendant's third plea, in substance as follows:

1st.   That said note claimed as a set-off is barred by the statute of limitations.

2nd.   That said note, while owned by said Daniel, and before it was assigned, was, among other matters of difference and indebtedness between the plaintiff and said Daniel, submitted by two mutual bonds of arbitration, under the hands and seals respectively of the said Daniel and the plaintiff, dated April

16th, 1844, to the arbitration of Dixwell Lathrop, Burton Ayres and Henry Headley. That in accordance with the terms of said submission, said arbitrators did, on the 17th day of April, 1844, make an award between the said parties, by which said note, as well as all other matters of obligation between said parties, was canceled. And further, that said note was not indorsed until long after it fell due.

3rd. Payment of said note to Daniel Merritt, July 1st, 1839, and that it was not assigned until after it fell due.

4th. That said Daniel transferred said note, after it fell due, to one Elisha Merritt, to whom the plaintiff fully paid said note while he, said Elisha, was the owner thereof.

5th. That after said note fell due, said Daniel transferred said note to Elisha Merritt, father of plaintiff and defendant; that said Elisha died possessed of said note, in August, 1841; that in September, 1841, defendant was duly appointed and qualified as executor of the estate of said Elisha; that in October, 1841, an account was had and stated between the plaintiff, in his individual capacity, as also as said executor; that at that accounting there was found to be due from the defendant to the plaintiff, over and above the note here pleaded as a set-off, the sum of $900, for which balance the defendant then and there executed and delivered to the plaintiff the note on which this suit is brought.

6th. Payment of said note claimed as set-off by plaintiff to defendant, October 11th, 1841.

To the plaintiff's first replication, defendant rejoins: That the plaintiff agreed with said Daniel to pay said note within sixteen years before the commencement of this suit.

Defendant traverses plaintiff's second, third, fourth, fifth and sixth several replications, and plaintiff joins issue thereon.

Plaintiff traverses, by his surrejoinder, the defendant's rejoinder to the plaintiff's first replication to the defendant's third plea, and the defendant joins issue thereon.

On the above issues this cause was tried at the May term of said court, 1856, and a verdict rendered in favor of the defendant of $179.49. Plaintiff moved for a new trial, which motion was overruled by the court, and judgment entered for the above amount and costs.

An appeal was granted to the Supreme Court, on the filing of a sufficient bond, which was done, and approved by the court.

The bill of exceptions shows that plaintiff read in evidence the note, a copy of which is set out in his declaration, and there rested his case.

Defendant then read in evidence a note signed and sealed by the plaintiff, dated August 1st, 1836, payable on its face to

Daniel Merritt or bearer, for $967, with interest at seven per cent. per annum, on the back of which there was a credit of $233.83, dated September 1st, 1837, and also an assignment in these words: "Pay Nathan Merritt or order, without recourse. Daniel Merritt." The reading of said note was objected to by the plaintiff; objection overruled, and plaintiff excepted.

Defendant then called *Daniel Merritt,* who, on a preliminary examination, swore he was the payee mentioned in said note pleaded as set-off; that the written assignment thereon was made by him in October, 1853.

Defendant then offered to prove by said witness, a promise by the plaintiff to pay said note, which would take it out of the statute of limitations. Plaintiff objected that the interest of said witness disqualified him for that purpose; which objection the court overruled, and plaintiff excepted to the ruling.

Said witness was then permitted to testify that in May, 1841, being the holder of said note, and wishing to liquidate an indebtedness to his father, Elisha Merritt, he applied to the plaintiff to know when he could pay said note; that plaintiff then requested witness to get their father to accept said note as part payment of witness' indebtedness to the father; and that plaintiff then said that he would pay said note whenever his father should demand. To the admission of all of which testimony the plaintiff objected; the court overruled the objection, and the plaintiff excepted.

On cross-examination said witness testified that in July, 1841, he sold and delivered said note to Elisha Merritt, his father, who then lived in Putnam county, New York; that said Elisha died in said county, in August, 1841; that the credit was made and indorsed on said note before the delivery to his father; that witness next saw said note in the fall of 1841, in the hands of defendant, then an executor of his father's estate; that plaintiff, witness and defendant are sons of said Elisha Merritt, deceased.

On re-examination by defendant, said witness stated that, at the time of the arbitration between himself and the plaintiff, in 1844, he was not the holder of, had no interest in, nor had since had any interest in, said note. To the admission of which testimony, plaintiff then and there objected. The court overruled his objection, and plaintiff then and there excepted to said ruling.

Said witness further testified that Nathan Merritt was, in 1841, a man of wealth and property, and abundantly able to pay the amount of plaintiff's note, and, though he lived in New York, he had been in this State some three or four times since

1841. Could not say that Stephen Merritt knew of Nathan's being in this State, but that he was in the same neighborhood.

Defendant then called *Miles Kendall*, an attorney at law, who was permitted by the court to testify that, in 1853 or 1854, at the instance of Nathan Merritt, he commenced a suit in the Circuit Court of Marshall county, Illinois, on the note here pleaded as a set-off; that Mr. Cook was also employed in the case; that he drew the declaration, and wrote to Mr. Cook to attend the case.

The plaintiff objected to this testimony. The court overruled the objection, and the plaintiff excepted.

Defendant then called *Henry G. Cotton*, who testified that he had been a practicing lawyer in the State of New York, and was skilled and learned in the laws of that State in 1841; that, at that time, in that State, a note payable to bearer, or to payee or bearer, was transferrable by sale and delivery, without an assignment in writing, and that such transferree had a right to sue upon such note in his own name.

To all of which testimony plaintiff objected at the time it was offered. The court overruled his objection, and plaintiff excepted to the ruling.

Defendant then read, in evidence, a certified copy of the last will and testament of Elisha Merritt, deceased, in which said testator, after making several special bequests, provides that the residue of his estate shall be equally divided between his seven sons—Hackeliah, Elijah, Nehemiah, Daniel, Joseph, John and Stephen; that if, at the time of his death, he should hold obligations against any of said seven sons which would amount to his dowry, he directs that his executors *shall not collect such obligations*, but shall give them up and take such son's receipt for his dowry; that if such obligation or obligations should exceed the amount of such son's dowry, then he directs that his executors shall only collect *so much of such excess as may be necessary to pay the legatees.*

He then appoints Nathan Merritt and Ashael Cole executors of said will.

Attached to said copy of the will of Elisha Merritt was a certificate, under the seal of the Surrogate Court of Putnam county, New York, and signed Ambrose Ryder, Surrogate, stating that the above was a true copy of said will, as it appeared of record in his office.

Attached to said will were letters testamentary, officially declaring, under the seal of said surrogate, that the will had been duly proved and approved, and that the administration of said estate was granted to said Nathan Merritt and Ashael Cole.

Defendant then read, in evidence, a deed from plaintiff to

himself, dated October 11th, 1841, by which said plaintiff released and quit-claimed to defendant all his interest and claim, of every kind or nature, present or prospective, in the estate of his father, Elisha Merritt, deceased, and by which deed he appointed the defendant attorney in fact, to do all things which might be necessary to the full enjoyment of such interest.

Defendant also read, in evidence, similar deeds to himself from each of the other residuary legatees, dated about the same time as the one from the plaintiff. To the reading of each of said deeds the plaintiff, at the time, objected as incompetent and irrelevant. The court overruled the objections, and the plaintiff excepted.

Defendant then offered to read, in evidence, a certified copy of proceedings had before the surrogate of Putnam county, New York, to the reading of which the plaintiff objected, insisting that the same were not properly authenticated, and that the substance of the same was incompetent and irrelevant, which objection was overruled by the court, and the plaintiff then and there excepted to the ruling. Said transcript was then read.

*Daniel Merritt* testified that he sold his share in his father's estate to Nathan Merritt for less than $1,000.

Here defendant rested his case.

Plaintiff then proved that, in the fall of 1855, the widow of Elisha Merritt was still alive, and was 85 years of age.

Plaintiff then read, in evidence, the deposition of *Joseph Merritt*, in which he testified that he was 52 years of age ; a farmer of Bureau county, Illinois ; a brother of the parties to this suit; that his father's estate consisted chiefly of notes, bonds, and some money ; that, on the evening before the settlement with the executors, he was at Nathan's house, and saw the interest computed on the notes and obligations, and the whole amount added up, amounting to a little over $11,000 ; that Nathan offered witness $200 not to appear against him before the surrogate.

Plaintiff then offered to read, in evidence, from said deposition testimony tending to impeach the memory and reliability of defendant's witness, Daniel Merritt, which the court would not permit, and plaintiff excepted.

Plaintiff proved that Nathan Merritt did act as executor of his father's estate.

*Joseph Merritt,* as a witness, testified that the plaintiff had lived in Illinois since 1836 ; that he had always been a man of such property that $1,000 could have been collected of him by execution ; that witness sold Nathan his interest in the estate for $850 ; that he never could find out the value of said estate ; that he never did believe that the $11,000, or thereabouts,

spoken of in his deposition, was really the whole of said estate; that Nathan never did nor would make an inventory.

Defendant then called *Daniel Merritt*, who testified that, at the arbitration between himself and the plaintiff, in 1844, plaintiff admitted that he had turned the note here pleaded as a set-off in the settlement of his father's estate, and that he was still liable on it for about $150; that his father told him, in July, 1841, that he thought the amount which would be coming to each of the boys to be about $900. To all of which testimony the plaintiff objected at the time it was offered. The court overruled the objection, and plaintiff excepted.

Defendant then called *Burton C. Cook*, who testified that he was employed by Nathan Merritt in the suit spoken of by Mr. Kendall; that he had seen the note offered in evidence by the defendant in this case in the hands of Nathan Merritt, before the assignment now upon it was written; that he did not attend the Marshall Court at that term on account of sickness. To so much of Cook's testimony as related to the suit in Marshall county, and his not attending said court, the plaintiff objected. The court overruled the objection, and plaintiff excepted.

The plaintiff asked the court, among other things, to instruct the jury as follows:

"10. If the jury believe, from the evidence, that the plaintiff and defendant, and the witness, Daniel Merritt, are brothers of each other, and were sons of Elisha Merritt, now deceased, and that, in 1836, Stephen Merritt, the plaintiff, gave to Daniel Merritt, the witness, the note or bond produced on this trial by the defendant, Nathan; and that afterwards, and in the lifetime of said Elisha Merritt, the father, said Daniel Merritt, to whom said note is payable on its face, sold and transferred said note or bond to said Elisha Merritt, so that he (said Elisha) became the legal holder and owner thereof; and that afterwards, in the summer of 1841, the said Elisha Merritt (still being the owner and holder of said note) died, leaving, as his last will and testament, the *will* read in evidence in this case; then, in such case, by operation of law and the will aforesaid, the share of Stephen Merritt in his father's estate consisted in the excess (if any) of the one-seventh of the residuary part of said estate, including the note offered by defendant, over all obligations and claims which Elisha Merritt, at his death, held against said Stephen.

"And if afterwards, on or about the 11th day of October, 1841, said Nathan Merritt, being then executor of said will, and, as such, holding said note, bought of said Stephen Merritt his said share in his father's estate, and took from him the quit-claim thereof read in evidence by the defendant, and gave him

therefor the promissory note sued on in this suit by the plaintiff; and if there is no proof of any other terms or conditions of said sale than those that appear on the face of those two papers·; in such case such purchase was in law a settlement of said note so held by said executor, and in such case is not a proper matter of set-off in favor of defendant in this case."

The court, at the request of defendant, gave the following qualifications to the foregoing tenth instruction :

" If, however, the terms and conditions of said sale and the other proof in the case show that at the time of the giving of the note sued on, it was the understanding of the parties that the note read in evidence by defendant was a subsisting claim, and that both notes were to be in force to be set off, one against the other, or otherwise paid; in such case the note offered by defendant is a proper set-off, if plaintiff has agreed to pay it within sixteen years, and if it has not been paid or discharged.

" If Elisha Merritt died the legal holder or owner of the note which defendant has offered in evidence, that note, with the other portions of his estate not bequeathed to others, passed by the will, to the seven sons named in the will. Stephen's interest was one-seventh part of this note, and one-seventh of the other portions of the estate not bequeathed to others ; and if he transferred all his interest in said estate while this note was unpaid and belonged to said estate, (and said estate had not been divided,) it carried as well his interest in this note as in the other portions of the estate."

To the giving of which qualifications to said instruction plaintiff objected, and excepted to the decision of the court in giving the same, when it was done.

Plaintiff asked the court to instruct the jury as follows :

" 11th. If Elisha Merritt was the owner and holder of the note offered by defendant, and held the same, as such owner, at the time of his death, then·upon his death the legal title and right to sue became vested in his executors as such; and the same could only be sued on in the name of the executors of Elisha Merritt, or in the name of some one to whom said executors transferred the same ; and in that state of case it could not be set up as a defense to a suit brought against one of the executors in his individual capacity.

" 12th. The defendant in this case having set up a title by indorsement to the note pleaded as a set-off in this suit, cannot sustain that plea by proving title by sale and delivery under the laws of the State of New York.

" 13th. If the jury believe, from the evidence, that the note mentioned in defendant's third plea as signed by Stephen Merritt, was not assigned and indorsed by Daniel Merritt, the payee

therein named, until 1853, and that the note was made in 1836, then, in law Daniel Merritt held the legal title to said note at the time of the arbitration mentioned in the pleadings, and if so, Daniel Merritt was, in contemplation of law, the owner and holder of said note at the time of said submission and award, and said note was satisfied by said award."

Each of which instructions the court refused to give to the jury, and plaintiff excepted.

The court, at the request of defendant, gave the following instructions to the jury, viz. :

" 2nd. If, before the arbitration between Stephen Merritt and Daniel Merritt, the note offered in evidence by defendant had been sold and delivered by Daniel Merritt to his father, for a valuable consideration, and with the knowledge of Stephen, and the father held the note at the time of the arbitration, then Stephen's liability to pay said note was not affected by said arbitration, even though Daniel's name had not been placed on the back of said note at the time of arbitration.

" 4th. That by the pleadings in this cause the execution of the note mentioned in defendant's third plea is admitted, and also the assignment of it by Daniel Merritt to the defendant is admitted, and that the note was given for a valid consideration is admitted.

" 5th. That if Daniel Merritt, before the arbitration, sold and delivered the note in defendant's third plea mentioned to Elisha Merritt, and if Elisha Merritt died the owner of said note, and if Nathan Merritt, being one of the executors of the estate of Elisha Merritt, paid up all the debts due by the deceased, and bought out all the interests of the widow and all the heirs of the said Elisha Merritt, *he* thereby became the owner of said note ; and being so the owner, if Daniel Merritt, *not* being the owner and holder at the time of the arbitration ; and if Stephen Merritt, within the last sixteen years, agreed to pay the note ; and if it has not been paid or otherwise satisfied ; the jury should, after deducting the amount of the note in the declaration mentioned, and such payments as have been made on the note in defendant's third plea mentioned, find a verdict for the defendant for the balance.   Interest should be computed on the note in the third plea mentioned at the rate of seven per cent., and on the note in the declaration mentioned, at the rate of six per cent. per annum.

" 6th. That if the jury believe, from the evidence, that the note given by Stephen Merritt to Daniel Merritt was sold and delivered by Daniel to his father before the arbitration between Daniel and Stephen ; and if Daniel was not the owner and holder of the note at the time of the arbitration ; and if they

further believe, from the evidence, that while Daniel owned the note, and within sixteen years last past, the said Stephen agreed to pay it, and desired Daniel to turn it out to their father to pay a debt which Daniel owed to his father, and that he would pay it to the father, and the note has not been paid or satisfied in any way, the jury should allow the amount of the note and interest, or such amount as may be due after deducting payments, if any ; and after deducting payments, if any, and the amount of the note from Nathan to Stephen, they should find a verdict for the defendant for the balance due, if any. Interest should be computed on the note given by Stephen to Daniel at the rate of seven per cent. per annum, and on the note given by Nathan to Stephen at the rate of six per cent. per annum ; provided, that the jury believe that at the commencement of this suit defendant was the owner of said note.

"7th. If, at the time of the arbitration between Stephen and Daniel, the note from Stephen to Daniel had been sold and delivered by Daniel to his father, and Daniel was not then the holder, the note was not affected by the arbitration ; and if Stephen has, within sixteen years last past, agreed with Daniel to pay it, and it has not been paid or satisfied in any way, then Nathan should be allowed the amount of the note in this suit, although Daniel may not have put his name on the back of the note until after the arbitration ; provided the jury believe, from the evidence, that Nathan was, at the commencement of this suit, the owner thereof.

"8th. The assignment *prima facie* vests the title of the note in Nathan Merritt, and unless it is proved that the note was not the property of Nathan, he is to be considered the owner of it.

"9th. If, at the time Daniel Merritt put his name on the back of the note, Nathan Merritt had bought out all the persons to whom Elisha Merritt had willed his property, and the estate had been settled; and if the note in the third plea mentioned belonged to Elisha when he died ; then Nathan was the owner of the note when this suit was brought, unless it had been paid to Daniel or Elisha, or paid or canceled in a settlement between Nathan and Stephen.

"10th. The jury, in determining whether the note on which this suit is brought is a valid and subsisting debt, should take into consideration the length of time which it has run, and the circumstances of the parties, and their usual mode of doing business. The payment or settlement of that note may be inferred from circumstances coupled with the lapse of time since the note was given, if the circumstances proven, coupled with such lapse of time, lead the minds of the jury to the conclusion that said note has been paid or settled, either by the under-

standing of the parties, being set off against the note held by defendant, or in any other way.

"11th. The question whether, at the time the note was given by Nathan to Stephen on which this suit is brought, the note which had been given by Stephen to Daniel, was settled, is a question of fact for the jury to determine; and in determining that question, the jury will consider all the circumstances connected with the transaction which are proved; all that the evidence shows in relation to the course of dealing between the parties; the amount of the interest which Stephen had in the estate of his father, and the statements which Stephen has made concerning the transaction; and the burden of proof to show that the note offered in evidence by defendant has been settled, is upon the plaintiff, and the jury ought not to presume that said note has been settled, unless it has been proven.

"12th. The only questions which the jury are to determine in relation to the note offered in evidence by the defendant, are,

"1st. Has the plaintiff promised to pay said note within sixteen years?

"2nd. Has the note ever been paid?

"3rd. Was Daniel the holder and owner of that note at the time of the arbitration between him and Stephen?

"4th. Was that note ever settled between Nathan and Stephen Merritt? or was there ever a settlement or accounting between them, in which Nathan was found to be indebted to Stephen over and above the amount of this note?

"And if the jury believe that it is proved that Stephen has promised to pay the note within sixteen years; and if it is not proved in this cause that Daniel was the holder and owner of this note at the time of the arbitration between him and Stephen; and if it is not proven that said note has not been paid; and if it is not proven that there has been a settlement or accounting between Nathan and Stephen, in which that note was settled, or in which it was proved that Nathan was indebted to Stephen over and above the amount of this note; and if it is proved that the defendant was the owner of this note at the time of the commencement of this suit; *then* the jury should allow to the defendant the amount unpaid upon said note, and interest at the rate of seven per cent. per annum.

"14th. The plaintiff is not permitted to deny, on this trial, that the note offered in evidence by the defendant, has been duly assigned to him, so as to vest the absolute property of the note in him."

To the giving of each of said instructions, so asked by the defendant and given by the court, the plaintiff objected when the

same were offered, and excepted to the decisions of the court in giving each of them respectively.

After verdict, defendant moved the court for a new trial, which motion the court overruled, and plaintiff excepted to the said decision of the court in overruling his motion for a new trial. And thereupon plaintiff prayed that his bill of exceptions should be then and there signed, sealed, and made a part of the record, which is done.

CYRUS DICKEY, and DICKEY & WALLACE, for Appellant.

·GLOVER & COOK, and LELAND & LELAND, for Appellee.

·BREESE, J. The only real questions in this case, are, was the note produced by defendant by way of set-off ·due and payable to him, and ·was there sufficient legal evidence to prove it.

Much pleading was had, and many instructions were asked on both sides, which we do not consider necessary to examine specially. It is only necessary to present the two points in controversy, and determine from them where the justice of the case is, and where the real merits lie.

The defendant, Nathan Merritt, it appears, is the brother of the plaintiff, and having purchased in October, 1841, from him his interest in his father's, Elisha Merritt's, estate, gave this ·note therefor.

Previous thereto, in 1836, the plaintiff had executed his note ·to another brother, Daniel Merritt, for nine hundred and sixty :seven dollars, at seven per cent. per annum, which, as the proof shows, had come into the possession of Elisha Merritt, and which was the note sought to be set off.

The bar of the statute of limitations was attempted to be interposed to this note, and also payment to Daniel Merritt, and payment to Elisha Merritt, while it was in his hands.

The defendant, in his plea setting up this note, also averred a · promise by the plaintiff, to pay it to Daniel within sixteen years next before the commencement of this suit.

The note appears to have come into the possession of the defendant, originally, as executor of his father, Elisha Merritt, who died in Putnam county, New York, in August, 1841, leaving a will with this clause in it, after devising his property to his seven sons, of whom the plaintiff was one, " that if, at the time of his death, he should hold obligations against any of said seven sons which would amount to his ' dowry,' his executors shall not collect such obligations, but shall give them up and take such son's receipt for his ' dowry ;' that if such obligation or obligations should exceed the amount of such son's

dowry, then his executors shall only collect so much of such excess as may be necessary to pay the legatees."

The defendant purchased out the interest of all the sons in this estate for about nine hundred dollars a share, for one of which the plaintiff's note sued on was given, and in 1853, Daniel assigned the note in due form to defendant, without recourse.

This note of plaintiff's was passed by Daniel to their father, Elisha Merritt, to pay a debt due from Daniel to his father, at the request of the plaintiff, he promising to pay it whenever his father should demand it. This conversation was in May, 1841. The delivery of the note to the father was in July, 1841. The credit indorsed on it of $233.83 was before the delivery to the father.

There was an arbitration of matters of difference between the plaintiff and Daniel Merritt, in 1844, at which time Daniel did not hold the note, nor had he any interest in it, but which plaintiff insists in his second replication to defendant's third plea, was canceled by the award made April 17, 1844.

This is a very concise statement of the leading facts, proved by Daniel Merritt, the payee of the note; he was the only or principal witness, and if he was improperly admitted to testify, the judgment must be reversed; otherwise, affirmed.

Was Daniel Merritt a competent witness?

A witness may be competent for one purpose, while he would not be for all purposes. An indorser is not excluded merely because his name is on the paper, but because, being there, he is responsible over, and has therefore an interest, unless protected by the indorsement. Here the witness indorsed without recourse.

In *Bradley* v. *Morris*, 3 Scam. R. 182, this court say, " an indorser of a negotiable instrument is invariably allowed to testify against the recovery of the holder, by proving that it has been discharged by payment or otherwise. In this case, however, there was no objection to the testimony of Warren, the indorser, even if it had gone to the foundation of the note, because he had indorsed the note without recourse. His testimony, therefore, could not be objected to upon the ground of policy, because his indorsement gave no additional currency or security to the note, nor was it (he) liable to objection upon the score of interest. His indorsement being without recourse, he could neither gain nor lose by the event of the suit, nor indeed incur any liability in any event."

On the authority of this case, and perceiving no possible objection on the ground of policy, we think Daniel Merritt was a competent witness to prove the subsequent promise by Stephen,

to take the note out of the operation of the statute of limitations. He does not avoid any legal liability imposed on him by so testifying, as to enable the defendant to recover the note of the plaintiff, for if he assigned to defendant a note on the plaintiff which had been paid, and the defendant should recover it of the plaintiff, the witness would be answerable in an action by the plaintiff, Stephen, against him, for the consequences. The liability of Daniel would be shifted merely, and therefore, as a witness, he was indifferent.

He was also competent to prove that he had parted with the note before the arbitration, the time when and how, and for what purpose, his special indorsement protecting him from all liability over, except such as may be traceable to his own fraud.

The facts then appear to have been as stated, and the position of the parties in the fall of 1841, after the death of Elisha Merritt, was this: The note pleaded as a set-off, was then the property of Elisha Merritt's estate, having been paid over and delivered to him, in his lifetime, at the request of the maker, in July, 1841. The defendant is executor of Elisha, and as such, obtains the note. He purchases out the interests of all the owners of it—the devisees of Elisha Merritt—the plaintiff included, settles up the estate and pays all the debts and claims, and insists he has become entitled to the whole of this note in his own right, and by the assignment by Daniel Merritt, in 1853, has the legal title and can set it off.

The plaintiff resists this, and replies that the note was left by his father; that by his will the executor was enjoined from collecting it, or so much of it as may be equal to his interest in his father's estate, and therefore he is not bound to pay.

The rejoinder by defendant is conclusive. You sold your interest in the estate for the very note you are now suing upon. I own that interest, or its representative, the note you gave to Daniel, and he delivered it to the testator. If I have to pay the note to you, you must pay your note to me, or the difference between them.

Possessing himself, as the defendant did, of this note honestly, and becoming its sole owner by his purchase of all the devisees, he was, in equity at least, the true owner, and being so, it was right and proper that Daniel should convey to him the legal title by his writing of indorsement in 1853. Really the assignment was not in issue, there being no denial of the fact, verified by affidavit.

The plaintiff, as is very manifest, attempts to get double the advantage from his father's estate that the other devisees derived from it. First, by claiming his note under the will, then by compelling the defendant to pay his note which was given for

his interest under the will, thus making his share of the estate about seventeen hundred dollars, against about $875 received by the other devisees, as averaged.

It was properly left to the jury to say, from the facts, if this could be so.

There is no pretense that the note was ever paid to Daniel, or to his father—it would have been taken up had it been paid.

The case abundantly shows that the two notes were left unadjusted by the brothers, as valid, mutual claims.  By the will the plaintiff might have taken the note on his share of the estate, before he sold to the defendant, but he did not do so, and the jury was perfectly right in refusing to give him, not only the full value of his interest in the estate, which was represented by the note *he* sued on, but absolve him also from paying his note, which was a part of the estate which he had sold, and which the defendant honestly purchased and owned.  One was properly set off against the other; indeed, the plaintiff admitted at the arbitration in Peru, in 1844, that there was about one hundred and fifty dollars due on this note, and for that only, with the accrued interest, was the judgment rendered for the defendant.

We see no error in the court refusing to go into the inquiry in regard to the difficulties between Daniel, the witness, and the plaintiff, growing out of law suits.  It was too remote, and would open a field of collateral matter too wide for any purpose of real justice.

The direct question as to the state of feeling of the witness, friendly or hostile, is the only proper one.  How that might be caused, is wholly unimportant, and would lead to distressing lengths.

The objection, that one of the witnesses was allowed to testify that he commenced a suit on the note set off, in 1853, has no force in it.  The fact of the commencement of a suit is like any other independent fact, and can be proved by parol—not the mode and manner, but the naked fact.  It was collateral only, and needed no record or files of court to prove it.  It had nothing special to do with the case, further than this, that commencing a suit on the note afforded ground for the inference that the defendant claimed the note at that time as one which the plaintiff ought to pay.

It was also objected, that Mr. Cotton could not prove by parol what the law of New York was in regard to the delivery of a promissory note.

This very remotely affected the question at bar, as the defendant claimed the note under a written assignment from the payee, which was not denied by plea verified by affidavit.

---

Merritt *v.* Merritt.

---

The rule may be, that the written or statute law of a State cannot be proved by parol, but the common law, for the most part made up of customs, may be proved by parol. It will be observed, Mr. Cotton did not say the law in New York, as he stated it, was the statute law. As it is so unimportant in this case, we will intend he spoke only of the common law there, or custom which existed among that community in respect to such paper.

The objection that plaintiff was not permitted to prove the mental infirmity of Daniel—impaired memory by sickness—has nothing in it.

The witness asked on this point was not shown to be capable of speaking to it, so that the jury could fully understand it. What was the character of his disease, and how necessarily did it affect his memory, and by what standard is the mental or bodily vigor of any man to be tested. Not by the opinions of those as imbecile, may be, as he. His own manner of testifying is the best test of mental power, and is never overlooked or disregarded by a jury. To go into these collateral inquiries would prolong a trial so unreasonably, that unless a very powerful reason exists for it, they should not be encouraged or indulged.

We do not deem it at all necessary to examine minutely the several instructions. The record does not show all that were given for plaintiff, so that we cannot know what bearing they may have had on the case, or the necessity for the instructions which were refused. Their substance and point may have been fully contained in those not now on the record. The tenth was properly modified by the court, and as modified, presents a proper view of the case. The eleventh, twelfth and thirteenth were properly refused.

As to the instructions on behalf of defendant, we may here, with great propriety, take occasion to remark, that a practice seems to be growing up to draw out instructions to a very great length, and injecting into them an argument of the case. This is a bad practice, and should not be encouraged by the courts. Instructions should be concise, and briefly present the point of law alone on which the party relies. These instructions of defendant are liable to this objection, but they present the law of the case fairly and fully, and from the evidence and the law, the jury was bound to find as they did. They could not believe it just, that one who had sold an estate should have the money for it and the estate besides.

The judgment is affirmed.

*Judgment affirmed.*