THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW A. STRAUCH, Plaintiff in Error.

*Opinion filed October 28, 1910—Rehearing denied Dec. 8, 1910.*

1. PRACTICE—*a bill of exceptions should be presented during term matters occurred.* A bill of exceptions should be presented at the term when the matters complained of occurred or within such time as the judge at that term has allowed, and it is not sufficient to incorporate such matters in a bill of exceptions presented, without an extension of time, at a later term.

2. CRIMINAL LAW—*effect of pleading to indictment.* A defendant who pleads not guilty to an indictment cannot thereafter, as a matter of right, make a motion to quash the indictment for any matters that occurred before the grand jury.

3. SAME—*statute does not require State's attorney to sign indictment.* There is no statute in Illinois requiring the State's attorney to sign an indictment, and the general rule is, that in the absence of a statute to the contrary it is not essential to the validity of an indictment that it be signed by the public prosecutor.

4. SAME—*proper practice where State's attorney is complaining witness.* Where the State's attorney is to be the complaining witness it is better practice for the court to appoint a special State's attorney before the matter is presented to the grand jury, but it is not ground for a motion to quash that the State's attorney appeared before the grand jury at the request of its foreman and answered questions and that he signed the indictment, but was not present when the grand jury examined the other witnesses or discussed the evidence and voted.

5. SAME—*when question as to error in refusing challenge for cause is not presented.* The question of alleged error in refusing a challenge for cause is not presented for review, on appeal, by an affidavit in support of the motion for new trial.

6. LIBEL—*when published article is a libel per se.* A published article charging a State's attorney with having prostituted his office for private interests and political purposes, for spite; that he was in collusion with violators of the liquor laws, and containing other direct charges and insinuations that he had grossly abused his office for dishonest purposes, is a libel *per se.*

7. SAME—*when an open letter from complaining witness to defendant is not admissible.* In a prosecution for libel an open letter from the complaining witness to the defendant, published some eight months prior to the libelous publication, and which shows on its face that it is in answer to a prior letter from the defendant, being in regard to a subject different from that of the libelous publication, is not admissible.

8. SAME—*admissibility of surrounding circumstances must be determined by trial judge.* In a libel prosecution the admissibility of the surrounding circumstances for the purpose of enlightening the jury as to the purport of the libelous article must be determined by the trial judge in his sound discretion, according to the degree of their relation to the matter in controversy.

9. SAME—*what not admissible to show hostility of complaining witness.* Where the complaining witness in a prosecution for libel for the publication of an article which is libelous *per se* has admitted that he is not on friendly terms with the defendant, it is not error to refuse to allow special facts to be proved for the purpose of showing the hostility of the complaining witness.

10. SAME—*defendant cannot show that he did not mean what he said.* In a prosecution for libel the guilt of the defendant must be determined by the article itself and the meaning that would naturally be attributed to the words used therein, and not by some unexpressed meaning intended by the defendant and unknown to the readers of the article.

11. SAME—*defendant has burden of proving truth of published article.* In a prosecution for libel the truth of the article, if published with good motives and for justifiable ends, is a defense; but the defense is an affirmative one, which the defendant must prove.

12. SAME—*effect where an article, though false, is published in good faith.* The fact that an article which is libelous in itself is published in good faith has no bearing upon the issues, except as to the amount of the fine, unless the charges are true; but the question of the amount of the fine does not concern the jury.

13. APPEALS AND ERRORS—*when refusal of a proper instruction will not reverse.*  Refusal of a proper instruction as to the duty of the jury, in weighing the defendant's testimony, to take into consideration the fact, if it was a fact, that he was corroborated by other credible evidence or by facts and circumstances proven on the trial, is not ground for reversal, where the defendant did not testify to any material facts with which the jury were concerned.

CARTWRIGHT, DUNN and COOKE, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Ogle county; the Hon. J. S. BAUME, Judge, presiding.

FRANC BACON, O. M. GROVE, and E. E. WINGERT, for plaintiff in error.

W. H. STEAD, Attorney General, W. J. EMERSON, State's Attorney, and RALPH E. EATON, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was indicted in Carroll county for criminal libel, and on a change of venue to Ogle county the first trial resulted in a disagreement and on the second trial a verdict of guilty was found against him, the court thereafter imposing a fine of $300 and costs.  The Appellate Court affirmed the judgment of the trial court.  This writ of error was then sued out.

Plaintiff in error on June 26, 1907, and for some time prior, was publisher of the *Chadwick Clarion,* a newspaper published at Chadwick, in Carroll county.  He was also supervisor of that county and had previously been postmaster and collector of his town.  The complaining witness, Frank J. Stransky, was on June 26, 1907, and has been since 1904, State's attorney of that county.  During his term of office he assisted the State's attorney of Stephenson county, in this State, in the prosecution of corporations and persons forming what is called in the evidence

the "bridge trust," for alleged violations of the laws con-
cerning conspiracies against trade. In 1907 the matter of
the illegal sale of liquor on election day was before the
grand jury of Carroll county, and a number of citizens of
Chadwick, including plaintiff in error, were subpœnæd as
witnesses. The question also apparently came up as to
whether a certain drug store in Chadwick had sold liquor
on that day. In the issue of his newspaper of June 26 the
plaintiff in error published an article headed "Stransky,
Chadwick and the Grand Jury." The portions of the arti-
cle that are especially claimed as libelous read as follows:

"The attention of the last grand jury was directed to
Chadwick. Many of its citizens had an invitation to ap-
pear before it, and so had we. The result of the stir-up
has brought out comparatively little violations. Of course,
it was not so much concerning violations than to get a
little political capital out of it and some new material for
attack. * * * We do not wish to criticise any honest in-
tention against violations of laws, but, so far as the State's
attorney and his local henchmen are concerned, there was
nothing in the movement but spite work and a chance at
giving us a good grilling before the grand jury. We did
not hesitate in the least to answer every fool question put
to us by the conceited fool of a State's attorney. Could
we have reversed the order we should have asked him
whether he had not at one time drank whisky in the Chad-
wick drug store and called for beer as a wash; also,
whether he did not play poker with a Chadwick gentleman
till three o'clock in the morning. We have been more than
confirmed in our belief that the attitude of Stransky in con-
nection with the bridge combine is one that will not bear
investigation. While we have no direct knowledge of his
offering his service or the getting in on the Stephenson
county prosecution, we are satisfied it was at his instiga-
tion. * * * There are some who have been deluded into
the belief that Stransky's aim is to enforce the laws. * * *

In connection with the bridge investigation it is evident an idea struck him that had a well defined purpose. To become associated with the Stephenson county attorney made other plans feasible. * * * It strikes one peculiar that the facts gathered in Stephenson county, some of the principal ones have not been reached or even an attempt has been made. To sum it all up, there is good grounds to suspect a nigger in the bush. Once a prosecution started in one county it made it easy to bring other violators to terms. There will be nothing further done in Carroll county about a bridge trust. One can feel safe on making this assertion. There is no doubt but that the bridge trust has proven a fat goose for someone. * * * This much came out of it while Stransky was quite willing to go after the saloons, but when it came to the drug store he was ready to shut off further investigation. It is a fact that he agreed with a certain gentleman to call off on the saloons with a light penalty if the drug store crowd would not be examined."

It is urged that the trial court erred in refusing to quash the indictment for the reason that, while the grand jury was in its private room investigating the indictment of plaintiff in error, the presiding judge entered the room and read a statement concerning the law of criminal libel from some typewritten sheets. Certain affidavits were offered concerning this point. It appears from them that some time during its deliberations, and before the indictment in question was found, the judge was requested by the grand jury to give instructions on the law of libel, and that the appearance of the judge before the jury was in response to that request. The affidavits do not set up any improper statement that it is claimed was made by the judge to the grand jury, but it is insisted it was error for him to make any statement in the jury room; that all instructions to the grand jury by the court should be given in open court. The record shows that the indictment in

this case was returned to the November term, 1907, of the Carroll county circuit court. The motion to quash the indictment was made on March 4, 1908, and overruled on March 6, 1908, at the March term of that court, but a bill of exceptions was not then presented containing the evidence and an exception to the ruling of the court in refusing to quash the indictment, nor did plaintiff in error ask leave for time to present such bill of exceptions. The leave to present the bill of exceptions was obtained on February 8, 1909, after plaintiff in error had been twice tried and once convicted and judgment pronounced against him.

These affidavits were presented on a motion to quash at the March term, 1908, of the circuit court of Carroll county. No motion was made at that term or leave granted to file a bill of exceptions of the matters heard at that term. The leave to present the bill of exceptions in this case was obtained at another term nearly a year later. A bill of exceptions must be taken at the term at which the rulings were made unless the court at that term extends the time within which the bill may be signed and sealed. (*Finch & Co.* v *Zenith Furnace Co.* 245 Ill. 586; *Village of Franklin Park* v. *Franklin,* 228 id. 591; *Cella* v. *Chicago and Western Indiana Railroad Co.* 217 id. 326; *Dougherty* v. *People,* 118 id. 160.) These affidavits are not properly in the record before this court.

It is further urged that the indictment should have been quashed because, it is claimed, Franklin J. Stransky, the State's attorney, was also the prosecuting witness in this case and appeared before the grand jury in his official capacity as State's attorney, examined witnesses and prepared and signed the indictment. There is nothing in the record to support these contentions except as to the signing of the indictment. On the contrary, the uncontroverted evidence shows that Stransky appeared before the grand jury as a witness at the request of its foreman; that he was not present at any time when any other witness besides himself

was before the grand jury in this case; that he was not there as State's attorney but as a witness, only; that he told the court there was a case to come before the grand jury in which he was to be prosecuting witness, and that he did not feel that he should give the grand jury any instructions or have anything to do with the case, only as a witness; that he was not present at any time when the grand jury were discussing the evidence or voting on the case. After the denial of the motion to quash on March 6, 1908, plaintiff in error pleaded not guilty. The first trial was then had, in which the jury disagreed. January 16, 1909, before the commencement of the second trial, plaintiff in error entered a motion for leave to amend his motion to quash the indictment for the reasons just stated. A defendant who has pleaded to the indictment cannot, as a matter of right, thereafter make a motion to quash it for any error that occurred before the grand jury. While the court may have the power to permit the plea of not guilty to be withdrawn for that purpose, the exercise of such power rests in the sound discretion of the trial court. (1 Bishop's New Crim. Proc. secs. 761, 882.) The fact that the State's attorney signed the indictment and appeared as a witness before the grand jury was as well known to plaintiff in error and his counsel at the time the original motion was made to quash the indictment as it was nearly a year later, when this question was first raised in the trial court. · After the indictment was returned to the November term, 1907, of the circuit court of Carroll county that court entered an order finding Stransky interested as a witness in said cause and appointed Ralph E. Eaton, an attorney, as special State's attorney to prosecute said cause. The court had the authority, (*Lavin* v. *Board of Commissioners of Cook County,* 245 Ill. 496,) and we think it would have been the better practice, to have appointed the special State's attorney before the matter was presented to the grand jury. The general rule is, that in

the absence of a statute to the contrary it is not essential to the validity of an indictment that it be signed by the public prosecutor. (Joyce on Indictments, sec. 447; *Commonwealth* v. *Stone*, 105 Mass. 469; *Ex parte Lane*, 135 U. S. 443; 1 Bishop's New Crim. Proc. sec. 702; Edwards on Grand Jury, p. 134; 10 Ency. of Pl. & Pr. 446; 22 Cyc. 252.) Our statute is silent as to the signature of the State's attorney on the indictment. His signature does not make the indictment. It becomes an indictment when returned in open court by the grand jurors with the endorsement thereon, "A true bill," and signed by the foreman. On the facts in this record we do not think the court erred in refusing to permit plaintiff in error to raise this question for the first time after the plea. Nor do we think there is anything shown on this record that would justify the court in quashing the indictment on the ground here urged, even though the motion had been made before the plea of not guilty was entered.

It was admitted on the trial that the article set forth in the first, second, third and seventh counts of the indictment was published by plaintiff in error in the *Chadwick Clarion*, a newspaper controlled and edited by him. It is insisted, however, by plaintiff in error that this article does not show a malicious defamation or one that comes within the definition of libel as set forth in our statute. Section 177 of the Criminal Code defines a libel as a "malicious defamation, expressed either by printing, or by signs or pictures * * * tending * * * to impeach the honesty, integrity, virtue or reputation or publish the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule or financial injury." (Hurd's Stat. 1909, p. 786.) The parts of the article in question heretofore set out in this opinion charge, directly and indirectly, that the State's attorney of Carroll county was guilty of improper and dishonest actions as a public official. The remainder of the article (which was of such

length that we deem it unnecessary to set it out) does not lessen in any particular the force of the charges in those parts which we have quoted. The article charges the said Stransky with having prostituted his office for private interests and political purposes, for spite; that he was in collusion with violators of the liquor law; that he was actuated by improper motives with reference to the bridge trust; that there was no doubt but that the bridge trust had "proven a fat goose for someone;" that to sum it all up, there was good ground to suspect something dishonest and crooked in the matter; that it was not the purpose of the State's attorney to enforce the law. Manifestly, both directly and by thinly veiled insinuation it charged the State's attorney with a gross abuse of his office. It was libelous *per se.* (*People* v. *Fuller,* 238 Ill. 116; *Hatch* v. *Potter,* 2 Gilm. 725; *Mitchell* v. *Milholland,* 106 Ill. 175.) No evidence was offered as to the truth of any of the charges. This article impeached the honesty, integrity, virtue and reputation of the complaining witness, and thereby exposed him to public hatred, contempt and ridicule. The court ruled properly in refusing to quash the indictment on the ground that the article was not libelous.

Counsel for the plaintiff in error further urge that the court refused a challenge for cause against one of the talesmen who was afterward peremptorily challenged, and that plaintiff in error during the trial exhausted all of his peremptory challenges. At the time this juror was excused the plaintiff in error still had several peremptory challenges and it does not appear that an undesirable juror was forced upon him. This question is attempted to be preserved in the record by an affidavit in support of the motion for a new trial. Under the authorities heretofore cited, these alleged occurrences, being shown only by affidavit, are not properly preserved for review here.

The plaintiff in error next insists that the trial court erred in improperly restricting the cross-examination of the

prosecuting witness. On his cross-examination Stransky was shown an "open letter" addressed by him to plaintiff in error, which he admitted he wrote and caused to be published before the publication upon which the indictment was founded. This letter, on being offered in evidence by plaintiff in error, was objected to and the objection was sustained. The letter was published some eight months before the alleged libelous matter. It did not relate to the same subject. The complaining witness had already testified that he was not friendly to plaintiff in error, and had not been on friendly terms with him since learning about his connection with the bridge trust, some time in 1906, and that he did not like him before that date. He further testified that he had expressed this hostile feeling more than once. The letter showed on its face that it was in answer to a prior letter from plaintiff in error. Had it been admitted the offer of such prior letter might have followed, and that, in its turn, might have brought up still other communications. This would have raised collateral issues which had nothing to do with the alleged libel. The rule is well established that in a prosecution for libel, articles published by the prosecuting witness reflecting on the defendant are incompetent and inadmissible. Were such publications allowed to be shown, the complaining witness would be compelled to defend his own writings without in any way explaining or tending to explain the character of the libel. (*Bee Publishing Co.* v. *Shields,* 94 N. W. Rep. 1029; Newell on Libel and Slander, p. 520; *Quinby* v. *Minnesota Tribune Co.* 38 Minn. 528; *Maynard* v. *Beardsley,* 22 Am. Dec. 595; *Smurthwaite* v. *News Publishing Co.* 83 N. W. Rep. 116.) It is contended that this letter was admissible to show the surrounding circumstances and give the jury an opportunity to judge correctly as to the purport of the alleged libelous article. The admissibility of the surrounding circumstances must be determined by the trial judge according to the degree of their relation to the fact in

controversy and in the exercise of his sound discretion. (*Davison* v. *People,* 90 Ill. 221.) Neither was the letter admissible in order to show the state of feeling of the complaining witness. It was too remote and would open a field of collateral matter too wide for any purpose of real justice. *Merritt* v. *Merritt,* 20 Ill. 65.

It is also urged that the court improperly sustained an objection to a question put to the prosecuting witness. It appears that the prosecuting witness and plaintiff in error had a joint debate at Chadwick in 1908. The following question was asked as to that debate: "Did you not say of the defendant on that occasion that he was a perjurer?" The only purpose of this question was to show the hostility of the witness, and he had already admitted that. It is insisted, however, by counsel for plaintiff in error that the special facts as to this hostility should have been allowed to be shown. The character and extent of the feeling of hostility entertained by a witness should be permitted to be shown. (1 Thompson on Trials, sec. 451; *Roberts* v. *People,* 226 Ill. 296; *State* v. *Collins,* 33 Kan. 77; *Geary* v. *People,* 22 Mich. 220; *Strange* v. *Commonwealth,* 64 S. W. Rep. (Ky.) 980; *Jones* v. *State,* 76 Ala. 8; *Butler* v. *State,* 34 Ark. 480; *Stewart* v. *Kindel,* 15 Col. 539; *State* v. *Dee,* 14 Minn. 35; 1 Greenleaf on Evidence, sec. 450.) This, however, had already been shown by the evidence. If this question had been answered, all the collateral questions raised by this joint debate might have been brought into question. While there should not be any undue restriction of the cross-examination of the complaining witness, a large discretion is necessarily left to the trial judge in determining questions of this character. (*Spohr* v. *City of Chicago,* 206 Ill. 441.) Had the question of this debate or of the open letter been gone into, the trial court would almost necessarily have been forced to abandon the trial of the real issues and enter upon those that were wholly immaterial. (*Woods* v. *Dailey,* 211 Ill. 495.) Nothing would

have been gained by a further investigation as to the feeling or prejudice of the complaining witness towards the plaintiff in error.

Plaintiff in error further insists that reversible error was committed by the special State's attorney in the cross-examination of the plaintiff in error. He was asked, on cross-examination, whether he had published in the issue of his paper July 8, 1908, an article containing the statement: "Franklin J. Stransky has prostituted the office of State's attorney for his private interests and for political purposes and through it to eke out his spite and that of others." An objection to this question was sustained. He was then asked if he had not published a printed hand-bill or "dodger" containing a similar statement. An objection to this question was sustained by the court. He was then asked if he had not written and caused to be printed in the same month an article which opened with the statement, "Let every man,—let every citizen of Carroll county,—take this statement home with him," followed by a charge against the State's attorney similar to the one already referred to. An objection was also sustained to this question. It is urged that the continued repetition of these questions tended to prejudice the jury even though the court sustained the objections. The plaintiff in error testified that he did not have any unfriendly feeling towards the prosecuting witness, and it was insisted by the special State's attorney that he had a right to prove the publication of these articles by plaintiff in error in order to show his feeling. Without deciding that question, we deem it sufficient to say that we do not think the prosecuting attorney asked these questions of the witness from an improper motive or that he persisted in asking similar questions merely for the purpose of prejudicing the jury. In the light of all the facts in the record we do not think the jury were improperly prejudiced by these questions.

Plaintiff in error next contends that the court erred in excluding evidence offered by the plaintiff in error as to what he intended by certain portions of the alleged libelous article. The rule is, that in the construction of an article such as this the whole of the language of the article must be read together and the meaning of any part gathered from the reading of the whole article. The test is, what would men of ordinary understanding infer from the words of the libel? (*People* v. *Fuller, supra;* Newell on Libel and Slander, p. 301; Townsend on Slander and Libel,—2d ed.—sec. 139.) The sense in which the publisher meant the language cannot be material. When a party has clearly imputed wrongdoing on the part of another, he can not afterwards be permitted to say, "I did not intend what my words legally imply." The guilt of plaintiff in error must be determined by the article itself and the meaning that would naturally be attributed to the words used therein, and not by any unexpressed meaning unknown to the readers of the article. *State* v. *Heacock,* 76 N. W. Rep. 654; *Miller* v. *Johnson,* 79 Ill. 58.

Plaintiff in error argues at length in regard to the giving and refusal of instructions. Twenty-two were given for the People, eighteen for plaintiff in error, and twenty-one asked by him were refused. Plaintiff in error argues that substantially all of those given for defendant in error were erroneous and that all the refused instructions were improperly refused. It is insisted that the first instruction for the People is misleading because, after setting out the definition of criminal libel as given in section 177 of the Criminal Code, it afterwards, in repeating the substance of the definition, left out the word "thereby," as given in the statute. We do not think it possible that the jury were misled on this account.

It is insisted that the sixth instruction given for the People permitted the jury to judge of the libelous article as ordinary and reasonable men would in the light of the

surrounding circumstances, and that the instruction did not confine the jury to the facts and circumstances in evidence. We do not think this instruction is open to this criticism. If it were, the other instructions given clearly tell the jury that they were limited to the facts and circumstances in evidence, and as instruction No. 6 did not direct a verdict it must necessarily be considerd in connection with all the other instructions.

Other instructions given for the People are complained of because, it is alleged, they put the burden of proof as to the truth of the article in question upon plaintiff in error. At common law the truth could not be shown in the defense of a prosecution for libel. The rule is changed in this State, and the truth is now a defense when published with good motives and for justifiable ends. It is, however, an affirmative defense and must be proved by the defendant. (*People* v. *Fuller, supra.*) The instructions in question were in harmony with this rule.

It is further insisted that certain instructions for the People failed to tell the jury that when the words of an alleged libel could have two meanings, one harmless and the other libelous, the innocent one should be taken. The instructions in question are not open to this charge. Furthermore, other instructions given for the plaintiff in error fully set out his contention on this question. Neither is there basis for counsel's contention that certain instructions for the People took from the jury the right to determine the law as well as the facts in the case.

The complaint as to the refusal of the court to give the first, second, third, fifth, eighth, ninth and tenth instructions asked by plaintiff in error is without merit. Each of these instructions called particular attention to isolated portions of the article in question. The rule is too well settled to require a citation of authorities that such instructions are improper. Other refused instructions cast upon the People the burden of proving the falsity of the statements

in said libelous article. The truth as to this article was an affirmative defense resting upon the plaintiff in error. (*People* v. *Fuller, supra.*) Certain other refused instructions were covered by those that were given.

The fourteenth refused instruction stated that plaintiff in error was a competent witness and that his testimony should not be discredited from caprice or because he was the defendant; that it should be treated the same as that of any other witness and subjected to the same tests, and while the jury might consider his interest in the result of the trial, yet they should also take into consideration the fact, if it was a fact, that he was corroborated by other credible evidence or by facts and circumstances proven on the trial. This instruction stated a correct rule of law and could properly have been given. (*McElroy* v. *People,* 202 Ill. 473; *Schultz* v. *People,* 210 id. 196.) Plaintiff in error, while called as a witness, did not testify as to any material facts, and therefore there was no testimony in the case that corroborated him. His testimony could not have influenced the verdict. The article was libelous in itself. His testimony, in substance, was as to only a few of the less serious charges in said article, claiming that they were published in good faith. The fact that they were published in good faith could have no bearing on the question at issue unless the charges were true. No attempt was made to show that they were true. The question of good faith could therefore have no bearing except as to the amount of the fine. With this the jury were not concerned. They only found whether he was guilty or innocent and the court fixed the fine. We do not think the refusal of this instruction injured plaintiff in error.

The instructions, taken as a series, fully and fairly instructed the jury as to the law of the case. While there was some inaccuracy in some of the instructions, it is impracticable to require absolute accuracy. It is sufficient if

they substantially present the law of the case fairly to the jury. *Ritzman* v. *People,* 110 Ill. 362.

It is admitted that plaintiff in error wrote the article in question. It was clearly libelous, and no attempt was made to show that the charges were true or that the main portions of the article were published with justifiable motives. The plaintiff in error was admittedly guilty. Considering the nature of the article in question, the fine was certainly not excessive. Under such circumstances this court will not reverse a judgment for slight errors committed on the trial when it can see they did not affect the result. *Wistrand* v. *People,* 218 Ill. 323, and cases cited.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CARTWRIGHT, DUNN and COOKE, JJ., dissenting.