CHARLES E. BELKNAP v. FRANK W. BALL.

*Libel and slander—Candidate for public office—Cause of action— Pleading—Demurrer.*

1. The declaration in a libel case averred in the first count that the defendant falsely and maliciously published in a public newspaper, in a coarse and blotted imitation of the handwriting of the plaintiff, who was a candidate for Congress, over an imitation of his genuine signature, the following libelous words: "I don't propose to go into debate on the tarriff differrences on wool, quinine, and all the things, because I ain't built that way;" that some of the words were misspelled, as above shown, and all of them were so printed and published as naturally to induce the belief on the part of the reader that the plaintiff actually wrote and subscribed the letter of which said words purported to be a *fac-simile*. In the second count plaintiff averred that at a public meeting in his district he made a speech, and that the defendant published a report of the same, in which report it was falsely and maliciously stated that plaintiff said that he was not there as a candidate begging for votes, and that he would refrain from discussing the tariffs on wool, quinine, etc., because "he wasn't built that way;" the meaning of which latter words was averred to be that plaintiff was too ignorant and imbecile to discuss said question, or to express in a decent way his intention not to discuss it. And it is held that the declaration made out a case proper to be submitted upon the facts which may be shown by the evidence.

2. The following general propositions are summarized from the opinion of Mr. Justice GRANT:

   *a*—Criticism is a discussion, or, as applicable in libel cases, a

censure, of the conduct, character, or utterances of the person criticised.

*b*—When one becomes a candidate for public office he thereby deliberately places his conduct, character, and utterances before the public for their discussion and consideration, and they may be criticised according to the taste of the writer or speaker, who will be protected in so doing, if in their statements of or reference to the facts upon which their criticisms are based they observe an honest regard for the truth.

*c*—Publications of falsehoods are never privileged. No public interest can be subserved by their publication and circulation.

Error to Kent. (Grove, J.) Argued June 11 and 12, 1890. Decided December 24, 1890.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Taggart, Wolcott & Ganson* and *Butterfield & Keeney,* for appellant.

*Blair, Kingsley & Kleinhans,* for defendant.

GRANT, J. This is an action on the case for libel.

Plaintiff was a candidate for election to the office of Representative in Congress. The first count in the declaration, after the usual allegations as to the character of plaintiff and his reputation among his neighbors, alleges that the defendant falsely, wickedly, and maliciously did compose, print, and publish, and cause to be composed, printed, and published in the Daily Democrat, a daily newspaper having a large circulation in the district from which plaintiff was a candidate, and in other parts of the State, and also in the Weekly Democrat, the following libelous words:

" I don't propose to go into debate on the tarriff differrences on wool, quinine, and all the things, because I ain't built that way.

"CHARLES E. BELKNAP."

That said words were printed and published in a coarse and blotted imitation of the handwriting of the plaintiff, with certain of said words wrongly spelled, and with an imitation of the genuine signature of the plaintiff below the words, thereby meaning that the plaintiff had written said words, and that they were written in the uncouth, blotted, and illy-spelled form represented in the publication, and that said words as printed and published were a *fac-simile* of the words written and signed by the plaintiff.

The second count alleges that at a public meeting held in the city of Grand Rapids plaintiff made a speech. The defamatory matter complained of is that the defendant published in said paper a report of this speech, in which he said:

"Mr. Belknap spoke first. He assured his neighbors that he was not there as a candidate begging for votes; * * * that he would refrain from discussing the tariffs on wool, quinine, etc., because, as he said, he wasn't built that way."

The innuendo is that defendant meant by this language that plaintiff was too ignorant and imbecile to discuss said question, or to express in a decent way his intention not to discuss it.

The defendant demurred, and as causes of demurrer says:

1. That the declaration does not allege that in said publication there was anything touching or affecting the moral character or integrity of the plaintiff; but that said publications are complained of only in that they are calculated to convey the impression that plaintiff was a stupid, ignorant, and illiterate man, and too ignorant to discuss the tariff question.

2. That no reflection or suspicion is alleged in the declaration to have been caused by the defendant upon the moral character, integrity, probity, and uprightness of the plaintiff.

3. That defendant was justified in publishing the articles complained of, because the plaintiff was a candidate for public office, and, in the absence of anything touching the moral character, integrity, probity, and uprightness of the plaintiff, the matter stated in the declaration, and the innuendoes therein drawn, do not set forth a cause of action.

The demurrer was sustained by the court below. The demurrer admits the truth of all material facts alleged in the declaration and which are well pleaded. It is proper to consider, first, what these admitted facts are. They are—

1. That the defendant published the statement.

2. That it was false and malicious, and done with the intention of injuring the plaintiff.

3. That defendant published the statement set forth in the first count in such a manner as naturally to induce the belief on the part of the reader that plaintiff actually wrote and subscribed the letter therein contained, and that in the second count the plaintiff actually used the words therein ascribed to him, and that they were published with the malicious intent to injure, and to induce the belief among the people that plaintiff was too ignorant to discuss the question of the tariff.

The gist of the argument on the part of the defendant is that no moral obliquity, unsoundness of mind, impairment of natural faculties, mental or physical, is charged against the plaintiff; that neither his moral, social, nor religious education is attacked, but only his political and academical education; that nothing was published which if entirely true or false and believed would prevent honest members of his own party from voting for him, or constitute a reason or bar to his holding the office, if elected; that the alleged defamatory matter was within the domain of justifiable criticism, and is privileged, and therefore actionable malice will not be inferred, nor can it be predicated in law upon such criticisms or allegations.

I am not prepared to yield assent to the statement that all honest members of either political party would vote for a confessed ignoramus to represent them in Congress. The statement bears its own refutation on its face, for it is apparent that these publications are made for the express purpose of preventing presumably honest members of the candidate's own political party, as well as others, from voting for him. Counsel omit in their statement one very important element, viz., intelligence. They would hardly be willing to assert that all honest intelligent men would vote for a candidate of their party for an important office who has confessed such ignorance as to show unfitness, although ignorance be no legal disqualification. If defendant's contention be correct, then one may publish of a candidate that he cannot read or write, or that he has confessed that he cannot. No one would seriously contend that such a publication would not be injurious and libelous, and that it would not deprive the candidate of many votes. To hold otherwise would be an insult to the intelligence of our people. Yet no moral turpitude or crime or legal disqualification is charged, and therefore no libel is uttered.

But why stop there if disqualification is to be made the test? Conviction of crime is not by the Constitution of the United States made a disqualification for the office of member of Congress. The only constitutional requirements are that the member shall be 25 years old, 7 years a citizen, and an inhabitant of the state where he is chosen. Aside from these the House of Representatives is the judge of the qualifications of its members. There are many crimes for the conviction of which that body would not consider a member elect disqualified; yet to publish of him, when a candidate, that he is guilty of such crime is admitted to be libelous, if not true. Public journals are in the performance of a high duty when

they truthfully place such charges before the public. To illustrate, that one has been a gambler does not disqualify him for the office. He may have reformed and become an exemplary citizen. But the fact that he has been a gambler is proper to be placed before the people. The electors are the ones to determine whether they wish such a man to represent them in Congress. Their verdict in his favor would undoubtedly be held conclusive of his right to the office. Disqualification to hold the office cannot, therefore, be made the test to determine the libelous character of the publication.

Criticism is a discussion, or, as applicable in libel cases, a censure, of the conduct or character or utterances of the person criticised. When one becomes a candidate for public office he thereby deliberately places these before the public for their discussion and consideration. They may be criticised according to the taste of the writer or speaker, and the law will protect them in so doing, provided that in their statements of or reference to the facts upon which their criticisms are based they observe an honest regard for the truth. In such a discussion the law gives a wide liberty. Within this limit public journals, speakers upon the hustings, and private individuals may express opinions, and indulge in criticisms upon the character or habits or mental and moral qualifications of official candidates. Cooley, Torts, 217. This is the freedom of the press guaranteed by the Constitution, a freedom necessary for the protection of the liberties and the proper enlightenment of the people. When the facts are truthfully written or spoken of a candidate's character and conduct they then become known to the reader and hearer, as well as to the writer and speaker. Both go before the people together, and they can seldom be misled, and the candidate cannot be injured within the meaning of the law. The same rea-

soning and rule applies to the utterances of a candidate when they are truthfully stated. But a statement that he gave utterance, either in writing or in speech, to certain language, is neither criticism nor expression of opinion. It is a statement of fact, for the truth of which the publisher is responsible. When language is truthfully stated the criticism thereon, if unjust, will fall harmless, for the former furnishes a ready antidote for the intended poison. Readers can then determine whether the writer has by the publication libeled himself or the candidate. When the language is falsely and maliciously stated privilege ceases to constitute a defense. The case of *Walker v. Tribune Co.*, 29 Fed. Rep. 827, is a good illustration of this principle. Walker had published a pamphlet, and the defendant in its newspaper spoke of it as "plainly the effusion of a crank." It was held that the word "crank" is not in itself actionable, that it has no necessary defamatory meaning, and if it is used in a defamatory sense such sense must be given by an appropriate innuendo. As a criticism, although it underrated the author's talents, it was not libelous. *Bronson v. Bruce*, 59 Mich. 471; *McAllister v. Free Press Co.*, 76 Id. 356; *Bailey v. Publishing Co.*, 40 Id. 257; *Wheaton v. Beecher*, 66 Id. 310.

The character and reputation of the candidate for public office should be protected from malicious attack by the same rule as are those of private individuals. Greater latitude is allowed, undoubtedly, in the one case than in the other. Beyond this the same rule applies to both. The correct and reasonable rule is stated in *Crane v. Waters*, 10 Fed. Rep. 619, as follows:

"The modern doctrine * * * appears to be that the public has a right to discuss, in good faith, the public conduct and qualifications of a public man * *

\* with more freedom than they can take with a private matter. \* \* \* In such discussions they are not held to prove the exact truth of their statements, and the soundness of their inferences, provided that they are not actuated by express malice, and that there is reasonable ground for their statements or inferences, all of which is for the jury."

In *Wheaton v. Beecher*, 66 Mich. 310, Mr. Justice SHER-WOOD, in delivering the opinion of the Court, says:

"There is no doubt that when a man in this country becomes a candidate for an office, elective or appointive, his character for honesty and integrity, and his qualifications and fitness for the position, are put before the people, and are thereby made proper subjects for comment, and that publications of the truth in regard to the candidate are not libelous; and it is equally true that the publication of falsehood against such candidate is wrong, and deserves to be punished."

Justice certainly demands that in these discussions one should not transcend the bounds of truth, for, in addition to the commission of a private wrong, great public injury might result. *Foster v. Scripps*, 39 Mich. 379. In my judgment, a more potent reason exists for the observance of truth in such a case than in publications respecting private matters.

Publications of falsehoods are never privileged. No public interest can be subserved by their publication and circulation. If statements, though false, are published in good faith, and with an honest belief of their truth, the damages may be reduced to a minimum. No other rule will properly protect the freedom of the press and the rights of individuals. In the language of one of the authorities:

"The only safe rule to adopt in such cases is to permit editors to publish what they please in relation to character and qualifications of candidates for office, but

holding them responsible for the truth of what they publish."

There may be difficulty in distinguishing between justifiable criticism and actionable misrepresentation, but this does not affect the rule. In such cases the jury must determine the question under the proper instructions. None of the cases cited by counsel for defendant, or in the opinion of the learned circuit judge, are at all similar in their facts to those of the case at bar. In none of them did the publication charge the plaintiff with having written or spoken certain language which in fact he did not use. These cases generally go no further than to hold that matters of opinion are not libelous. In my judgment, until courts are prepared to hold that ignorance constitutes no unfitness for office, they must hold the publication set forth in the first count as libelous. If such a letter were written by the plaintiff, it would show him to be ignorant, illiterate, and incapable to perform intelligently his duties as a member of Congress.

The character of the language set forth in the second count depends upon the meaning of the words, "I ain't built that way." The innuendo says that defendant meant that plaintiff was too ignorant and imbecile to discuss the question, or to express in a decent way his intention not to discuss it. The province of the innuendo is to explain and give meaning to ambiguous language. If extrinsic evidence is required to ascertain its meaning the jury must determine that question. *Bourreseau v. Journal Co.*, 63 Mich. 425. The meaning of these words as used in the context is certainly not clear. The demurrer for the purposes of this case admits both the meaning supplied by the innuendo and the malice charged. When all the facts are placed before the court and jury upon the trial, the question whether or not the publication was libelous will be presented for their determination.

The declaration makes out a case proper to be submitted upon the facts which may be shown by the evidence.

The judgment must be reversed, with costs of both courts, and the case remanded for further proceedings.

The other Justices concurred.