DUNNEBACK v. TRIBUNE PRINTING CO.

| | |
|---|---|
| 108 | 75 |
| 119 | 620 |
| 108 | 75 |
| 124 | 363 |
| 124 | 384 |

1. LIBEL—PRIVILEGE—CANDIDATE FOR PUBLIC OFFICE.

Newspapers have a right to state, for the guidance of electors, any fact which affects the fitness of a candidate for a public office. While the law of libel requires, in such cases, that, in their statements of facts, they observe an honest regard for the truth, when they have done so, they are not responsible.

2. SAME—JUSTIFICATION.

Plaintiff was a candidate for county treasurer. The defendant stated editorially that he was an unfit candidate; that he had been given reason to expect, two years before, that he would be appointed deputy in the same office; that the reason why he was not so appointed was that the treasurer's bondsmen seriously objected, not wishing to be held in any way responsible for the public funds if plaintiff had any share in the handling of them. On the trial, four of said bondsmen testified that, after investigation, they refused to sign the treasurer's bond if he appointed plaintiff. Held, that the gist of the article was the refusal of the bondsmen to become responsible if plaintiff should be appointed, which was proved to be true; and that all else in the article was justifiable criticism based upon that fact. HOOKER, J., dissenting.

Error to Wayne; Hosmer, J. Submitted December 3, 1895. Decided December 30, 1895.

Case by Joseph F. Dunneback against the Tribune Printing Company for libel. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*William J. Gray* (*James H. Pound*, of counsel), for appellant.

*Brooke & Spalding*, for appellee.

GRANT, J. I think the circuit court properly directed a verdict for the defendant. The declaration contains four counts. The first two contain no innuendoes, and are based upon the theory that the article is libelous *per se.* The third count contains an innuendo that the article meant that plaintiff was dishonest. The fourth count contains the innuendo that the article meant that plaintiff was not appointed deputy county treasurer because the bondsmen of the county treasurer objected upon the ground that he was dishonest. Defendant gave notice, with its plea, that it would prove the truth of the facts stated in the article. Plaintiff rested his case upon proof of the publication, and that he was the nominee for county treasurer. Defendant then introduced Mr. Huebner, who was county treasurer for the term beginning January 1, 1891. He testified that he had promised the position of deputy treasurer to the plaintiff; that he did not appoint him, because he was not satisfactory to his proposed bondsmen; that they made an investigation, and, after such investigation, still objected. Collins B. Hubbard, Edwin F. Mack, Levi L. Barbour, and Richard H. Fyfe, four of Mr. Huebner's bondsmen, testified that they refused to sign his bond if he appointed the plaintiff, and so refused after investigation. It thus appears that the truth of the statements made in the article was conclusively proven.

Plaintiff was not sworn, and introduced no testimony, except as above stated.

Plaintiff was a candidate for a very responsible and important public office. Newspapers had the right to state, for the guidance of electors, any fact which affected his fitness for that office. The newspapers in such case are not responsible for the inferences to be drawn from such facts. The law of libel requires in these cases that newspapers in their statements of facts observe an honest regard for the truth, and, when they have done so, they are not responsible. This subject is fully discussed and authorities cited in *Belknap* v. *Ball*, 83 Mich. 583. See, also, *McAllister* v. *Free Press Co.*, 76 Mich. 338, 356.

But it is insisted that the statement "they [the bonds-men] did not wish to be held in any way responsible for the public funds if Mr. Dunneback had any share in the handling of them," is the statement of a fact, the truth of which is not proven. The chief duty of the county treas-urer and his deputy is to have the care, custody, control, and disbursement of the public funds. For the faithful performance of this duty the bondsmen become respon-sible. The proposed bondsmen were officers of the Cit-izens' Savings Bank, and it is the fair presumption that their sole desire was that their principal should select a deputy whose character in all respects would be a guaranty for the faithful management of the funds for which their principal was to become responsible. It is difficult to conceive that they would have objected to any one in whose hands they would consider these funds to be safe. The reasons why these men considered it unsafe for plaintiff to be appointed deputy are immaterial. It was unnecessary that they should make any direct charge of dishonesty, nor did they. There might be many rea-sons why they should not wish to be held responsible for the public funds in case of his appointment. These might relate to his financial standing, business ability, moral character, incompetency, and many other things. The gist of the article is the refusal of the bondsmen to become

responsible if plaintiff were appointed. This was proven to be true. All else in the article is justifiable criticism based upon this fact. *Belknap* v. *Ball*, 83 Mich. 588.

The judgment should be affirmed.

LONG and MONTGOMERY, JJ., concurred with GRANT, J. McGRATH, C. J., did not sit.

HOOKER, J. (*dissenting*). Upon the trial of this cause (an action for libel), the circuit judge directed a verdict for the defendant. The plaintiff was candidate for county treasurer, and the following appeared editorially in the defendant's newspaper:

### "POOR MATERIAL FOR TREASURER.

"The circumstances under which the Democrat county ticket was constructed were not such as to inspire great confidence in the nominees of the convention for any positions of official service. They were especially not calculated to bring to the front men fitted for places of the highest responsibility and trust. The purchase of votes was one of the open and notorious features of the convention, and, though the odium of these transactions does not attach to all the nominees, it places those who are not implicated in exceedingly bad company.

"Without reference to any possible share in the more scandalous proceedings of the convention, the outcome was, as might be expected, the nomination of some very unfit candidates. The nominee for county treasurer is one of these. He was given reason to expect two years ago that he would be appointed deputy in the same office. The reason why he was not so appointed was that the treasurer's bondsmen seriously objected. *They did not wish to be held in any way responsible for the public funds, if Mr. Dunneback had any share in the handling of them.* If political feeling were left entirely out, it would be accepted by almost every one as a truism that the man who is to have care of public funds to the amount of several hundred thousand dollars a year ought to be one in whom anybody's bondsmen would have confidence, and who could secure some of the best men in the city upon his own bond. If any private individual should intrust a business of the same amount to a man who was without financial responsibility of his own, and who lacked

the confidence of other moneyed men, his friends would consider the advisability of having him placed under a guardian. It is safe to say that of the substantial business men who expect to vote the Democrat ticket next Tuesday there is not one who would place a business of $700,000 or $800,000 a year in the hands of Mr. Dunneback.

" Fortunately, the voters of Wayne county are not driven to that necessity. The opposing candidate for the responsible office of county treasurer, Milton H. Carleton, of Canton, has shown his capacity for affairs by building up a large business of his own, and by accumulating a comfortable fortune. He is financially responsible in his own name for a large amount, and he will have no trouble in securing good bondsmen for any required sum. The position of county treasurer is in intent, if not in practice, a business, and not a political office. We believe the taxpayers of this large and wealthy county have sense enough to see that the incumbent ought to be a practical business man, who has demonstrated his capacity for public affairs by the successful conduct of a large private business."

The evidence, which is all returned, shows beyond dispute that the plaintiff had on a former occasion been promised the appointment of deputy county treasurer by the county treasurer elect, but was not appointed, and that the reason was that the persons who became the treasurer's bondsmen refused to sign such bonds if such appointment was made. But it is not so clear that the refusal was through an unwillingness to be held responsible if Dunneback was to *handle the funds.* Such an inference might be a natural, but not a necessary, one. If, as a matter of fact, it was true that the bondsmen were unwilling to be held responsible if Dunneback was to handle the funds, the truth of the statement would be a complete defense; but if, as a matter of fact, their unwillingness was based on another reason, the inference drawn by defendent may have been wrong, and the assertion a misstatement of fact, none the less actionable because based upon an inference, and, if the natural import of the language was to charge dishonesty, the language was actionable. The article clearly implies a want of confidence,

and, while the general import may be that of a want of confidence in business ability, care, watchfulness, and the other attributes which are essential to make one a safe custodian of money, the term "want of confidence" is susceptible of application to the question of integrity of character. It therefore becomes a necessity to determine (1) whether the words implied a want of confidence in plaintiff's honesty; (2) whether the bondsmen actually had such want of confidence. These were questions for the jury under proper instructions. Inasmuch as the court decided them, I think the judgment should be reversed, and a new trial ordered.