SMURTHWAITE v. NEWS PUBLISHING CO.

1. LIBEL—CANDIDATES FOR OFFICE—NEWSPAPER CRITICISM.

While newspapers are allowed a great deal of latitude in the discussion of matters involved in an election, and of the fitness of candidates for office, the law of libel requires them to observe in their statements of fact an honest regard for the truth.

2. SAME—PROVOCATION—EVIDENCE.

In an action for libel, defendant may show that the publication was in reply to previous publications of plaintiff charging defendant with disreputable conduct, and may have the provocative publications admitted in evidence.

3. SAME—MALICE.

Where a published article is libelous and untrue, and is not justified by the circumstances of the case, the publication is actionable, irrespective of the question of malice.

4. SAME—LAW OF RETORT.

Where, in an action for libel, defendant claims that his publication was provoked, and was written in self-defense, to make such defense available his retorts must have been necessary to his defense, or such as fairly arose out of the charges made.

Error to Manistee; McMahon, J. Submitted January 31, 1900. Decided June 5, 1900.

Case by Thomas Smurthwaite against the News Publishing Company for libel. From a judgment for defendant, plaintiff brings error. Reversed,

*J. Byron Judkins* and *Charles A. Withey*, for appellant.

*Dovel & Smith*, for appellee.

MOORE, J. In April, 1898, the plaintiff, who was then mayor of Manistee, was a candidate for re-election. The campaign engendered a good deal of feeling. It was claimed that certain of the citizens of Manistee desired to sell to the city the plant owned by a waterworks company for a large price. The question of increased valuation of property was also made an issue. It was claimed the ticket with which plaintiff was affiliated represented one side of these questions, and that the defendant company was controlled by the men who represented the other side of the controversy. The plaintiff had access to the columns of a newspaper, and contributed a number of articles to the bitter newspaper war which was waged. After the election was over, he sued defendant in an action of libel. The case was tried before a jury. The charge of the court, so far as it is material to state here, was as follows:

"It is claimed on the part of the plaintiff here that a certain publication made by the defendant in a newspaper called the Daily News attributed to the plaintiff conduct which tended to bring him into disgrace and disrepute, hatred, contempt, and ridicule, and which article was libelous, and forms the basis of a right of action. That part of the article which is complained of is as follows:

"'Isn't Mr. Smurthwaite the gentleman who held the office of prosecuting attorney for two terms in Manistee county, under a Republican administration, and received $4,800, when he was not a citizen, and as a lawyer knew that he was illegally holding the office and receiving compensation for the same?'

"A couple of days later this appears:

" 'We are patiently awaiting an answer from Mayor Smurthwaite in regard to his receiving salary as a public official while not a citizen of the United States.'

"And a couple of days later still:

" ' We are pleased to see Mayor Smurthwaite sign his name to one of his editorials, and must acknowledge that his explanation is very fluent, and to the point. The News made a simple statement of facts. He has answered it, and acknowledged its truth.'

"Now, the part of this article which I regard as libelous, if it was printed of and concerning the plaintiff, and is false and malicious, is as follows: 'And as a lawyer knew that he was illegally holding the office and receiving compensation for the same.' The first part of the article, 'Isn't Mr. Smurthwaite the gentleman who held the office of prosecuting attorney for two terms in Manistee county, under a Republican administration, and received $4,800, when he was not a citizen?'—that part standing alone,—I do not think is libelous. It is a mere question, and there was a question as to Mr. Smurthwaite's citizenship. To say the least, it was open to doubt; and the mere speaking of the words or the publication of the words contained in the question as to whether he is the same person who held the office and received the salary when he was not a citizen,—I say the publication of that part of the article,—I do not think would be libelous. It would not necessarily tend to bring him into disrepute and disgrace. But the last part of the question, which intimates that Mr. Smurthwaite knew that he was illegally holding the office and drawing the compensation, if it is false and maliciously published, is libelous, in my judgment. The two articles published on subsequent days, standing alone, in my judgment, are not libelous, and they are admitted as being a part of the general charge, and explanatory of the attitude of the defendant towards him. Now, if the plaintiff is entitled to recover at all at your hands, gentlemen, it is for the publication of this one article, and no other. Other articles have been introduced here, but they are collateral, and explanatory of the main charge, and cannot of themselves form any basis for a recovery in the case. The whole case rests upon this article,—upon the charge of Mr. Smurthwaite holding the office of prosecuting attorney for four

years, and that he drew this salary, when he knew that he was not a citizen of the United States, and not entitled to hold the office. The plaintiff introduced this article. It was received in evidence as being possibly, at least, libelous, and the foundation of a right of action.  *  *  *

"Now, on the other hand, the defendant, when it came to the defense in the case, introduced certain articles, several of them, for the purpose of showing that the plaintiff provoked the controversy in question. These articles have nothing to do as a foundation for a right of action, and this one article is the foundation of the case. Still, gentlemen, these articles were introduced for the purpose of showing that the plaintiff was the aggressor; that he commenced the controversy by articles written prior to this one of which he complains, of a provoking nature, and calculated to engender the dispute which subsequently arose. This much, gentlemen, for the purpose of clearing the atmosphere, and impressing upon you that these other articles which were introduced by the respective parties are not a part of the cause of action, but are explanatory of the attitude of the parties, and their state of mind, and their rights in the case.  *  *  *  This article which I have read to you, and which forms the basis of this action, is a libelous article if it is false and published with malice, —published falsely and maliciously. So, though it does not, perhaps, impute to the plaintiff the commission of a crime, yet it does charge him with a discreditable and disreputable act, if he knowingly, intentionally, and purposely held the office of prosecuting attorney of this county for four years, and drew the salary of the office, knowing that he was not entitled to it, that he was not a citizen, and was guilty of an act which was disgraceful in its nature, immoral, and subversive of good order and law; and therefore, if the defendant published this article, and it was false, and published it with malice, it was a libel, and, unless it was excused by some other fact, it would form the basis of the plaintiff's right of action to recover damages in this case.

"The defendant, therefore, is liable for all damages which may have been occasioned by this article, unless it was excused by some other facts which I shall comment upon hereafter. Now, what is the defense? In the first place, the defense claims that the article was privileged. Now, a privilege, in this connection, is something which excuses the publication of that which would otherwise be libelous. Let me illustrate. What goes on in this court-

house daily is absolutely privileged.  Suppose that I, in the course of this charge, say something which reflects injuriously upon some person here; suppose I attribute to such person a disreputable character,—no one could sue me for libel.  Judicial proceedings in the courts are absolutely privileged, and what is said there cannot form the basis of an action for libel or slander.  The attorneys, in the course of their arguments, are privileged.  And this is because it is our duty to speak.  We have no option in the matter.  We are bound to discuss these things, and we do it in pursuance of our official duties, and cannot be held liable.  Therefore, this is what is known as privileged. * * *  Legitimate criticisms of public matters and public men, in which the public generally are interested, are qualifiedly privileged; and, unless they are spoken falsely and maliciously, without due regard for the rights of others, and with a bad and wicked purpose, they can form the basis for no action for slander or for libel.  And this privilege, in a general way, applies to the discussion of the character of candidates for public office.  When a man declares himself a candidate for a public office, one to which the people are asked to elect him and choose him, the people have a right to know what manner of man he is,—whether he is capable of filling the office with credit, honestly, and efficiently.  Every one has an interest, and the public newspapers, which are organs of public opinion, and are justified in a large degree by the enlightenment which they furnish to the public, have a right to discuss such candidates for office, and discuss their qualifications, and to tell the people fearlessly what manner of men they are, and whether they are fit candidates for the office which they seek.  In carrying out and performing this public duty, a newspaper may comment severely and caustically upon the candidate.  It may frankly express its opinion as to the candidate's qualifications for the office, his fitness for it, so long as these discussions are confined to frank and fair statements of opinion.  But the newspaper must not publish false and malicious statements of fact.  It has no right to state that a man is a thief falsely, when he is a candidate for office, even though the paper may be opposed to him politically and otherwise; but it has a right to candidly and fairly discuss his qualifications, and to tell the truth about it in a fair and legitimate way. But it must not make false and malicious statements of fact.  It must not vilify him generally, and without regard to truth.  It must confine itself to a legitimate dis-

cussion of his qualifications and of his character so far as that relates to his capabilities and qualifications for the office. In this case, any article published by the defendant which was a fair discussion of Mr. Smurthwaite's qualifications and fitness for the office of mayor of this city would be privileged, and, if it was spoken without malice, could form the basis of no action in this court for libel; but statements which are false, and made maliciously, are not justified by the privilege, and no man who makes a false or malicious statement can claim that it is privileged. The privilege only extends to that which is true and to matters of opinion.

" The defense further claims that the article in question was provoked, and was written in legitimate self-defense. One who introduces a newspaper controversy, and himself provokes it, cannot be heard to complain in a court if he gets the worst of the bargain. That is subject to this limitation, gentlemen: When a man enters the arena, and challenges all comers, so to speak, in a newspaper controversy, and he subjects himself to replies and retorts to what he writes, he cannot complain of an article which is not false and malicious, written in reply to that which he has written and published himself. If Mr. Smurthwaite, the plaintiff here, wrote articles in the Herald charging this newspaper, the Daily News, with dishonesty and disreputable conduct, and charging its stockholders and directors with disreputable and disgraceful conduct, the Daily News would have a right to reply to such articles, and reply somewhat severely. No exact measure can be made of a man's right of self-defense, either as to his person or reputation. He may hit back, and defend himself; and when he is forced to it, even if he goes further than the strict necessities of the case require, he is not liable; he has a right to make his defense sufficient and complete. But the publication by the plaintiff of provocative articles would not justify general defamation, and would not justify any false or malicious statements against him. It would justify legitimate replies to his article, and legitimate criticism thereon. The defense claim that Mr. Smurthwaite began the controversy. They assert that in the month of March the articles appeared in the Herald written by Mr. Smurthwaite, reflecting severely upon the Daily News, and upon its stockholders and directors; and that those articles which have been introduced here as tending to show malice, and the article which is here as the foundation of the plaintiff's

claim for damages, were provoked or drawn out by Mr. Smurthwaite's articles in the Herald, and were legitimate replies thereto. Now, if that be so, and the article in question here is not malicious, it is a defense, and your verdict should be for the defendant. One may defend himself in good faith, and may criticise the statements of one who invites newspaper controversy. But no amount of provocation will justify a falsehood and malice. If you find the article complained of was both false and malicious, the defendant can claim no privilege; but if it was called out by the articles written by the plaintiff himself, and published in the Herald, and was a reply thereto, or if the article was true as a matter of fact, then the plaintiff is not entitled to recover.

"I have spoken about this term 'malice' several times in the course of this charge. Malice in law, for the purpose of this case, perhaps, would mean any improper or wrongful motive, hatred, ill-will, vindictiveness, recklessness, or disregard for the rights of others. These attitudes of mind are what the law means by malice. Now, malice is either express or implied, as the law says. Express malice is that malice which may be proven by extrinsic evidence, as if they should prove in this case that Mr. Lee actually hated Mr. Smurthwaite, and had a grudge against him, and was writing about him for the purpose of injuring him, maliciously and angrily, and in a spirit of hatred and vindictiveness. Implied malice is malice which is implied from the character of the article. Now, a false and malicious statement of fact is presumably malicious in law. Malice may be rebutted by proof, but, on the face of it, any statement which is false, and tends to injure the aggrieved party, is malicious.   *   *   *
This article, on its face, if it is not true, is libelous. It imputes to the plaintiff disreputable conduct. If it is true as a matter of fact, the defendant, acting in good faith, had a right to publish it; if it was false, it had not, unless it was called out by due provocation, and was written in self-defense. The article may be privileged as a matter of law if, in your judgment, it was written in good faith, without malice, and was a legitimate criticism of the plaintiff as a candidate for public office; the article may be justified if you find it was a legitimate matter of self-defense, and was provoked by adequate provocation on the part of the plaintiff; otherwise, the article is libelous, and carries with it the right to recover damages."

The jury returned a verdict in favor of defendant. The case is brought here by the plaintiff.

A great many of the assignments of error relate to the refusal of the court to permit certain publications to be offered in evidence, the circuit judge holding they were not libelous. These publications were discussions of the matters involved in the election, and of the fitness of the candidates for the offices for which they sought election. A good deal of latitude must be allowed to newspapers and individuals in discussions of this character. The rule is so fully stated in recent cases that we content ourselves with calling attention to them. *Belknap* v. *Ball*, 83 Mich. 583 (47 N. W. 674, 11 L. R. A. 72, 21 Am. St. Rep. 622); *Dunneback* v. *Printing Co.*, 108 Mich. 75 (65 N. W. 583); *Eikhoff* v. *Gilbert, ante*, 353 (83 N. W. 110). See, also, Odgers, Libel & S. pp. 32, 41; *Bronson* v. *Bruce*, 59 Mich. 467, 471 (26 N. W. 671, 60 Am. Rep. 307).

A large number of assignments of error relate to the admission in evidence of articles written by plaintiff which had been published with his consent, relating to the defendant newspaper and some of its stockholders. Defendant had the right to show by way of defense that the publications made by it were in reply to these communications. Their admission was not error.

A large number of the assignments of error relate to the charge of the court. The charge of the learned judge, in the main, was a correct exposition of the law of libel, but we think it contained some errors which might mislead the jury, like the following language:

"This article which I have read to you, and which forms the basis of this action; is a libelous article if it is false and published with malice,—published falsely and maliciously; * * * and therefore, if the defendant published this article, and it was false, and published it with malice, it was a libel, and, unless it was excused by some other fact, it would form the basis," etc.

Our understanding is that if the published article is libelous, and is untrue, and is not a proper reply to the

articles published by the plaintiff which provoked its publication, the publication would be actionable, irrespective of the question of malice.

We think, too, the judge stated the rule too broadly as to what may be published by way of self-defense in an action of libel, when the plaintiff provokes the controversy. In the recent case of *Brewer* v. *Chase*, 121 Mich. 526 (80 N. W. 575), the rule is clearly stated by Justice HOOKER as follows:

" It is contended that these statements were privileged, because made in self-defense, upon the theory that they discredit the plaintiff, and show him unworthy of belief. The law justifies a man in repelling a libelous charge by a denial or an explanation.   He has a qualified privilege to answer the charge; and if he does so in good faith, and what he publishes is fairly an answer, and is published for the purpose of repelling the charge, and not with malice, it is privileged, though it be false.   The court will determine whether the occasion is one which justifies such publication, but the question of good faith — *i. e.*, malice — is for the jury.   It must not be supposed that, when a libelous article is published, the person libeled is at once authorized to publish any and all kinds of charges against the offender, upon the theory that they tend to degrade him, and thereby discredit his libelous statements.   If this were so, every libel might be answered in this way, and the most disgraceful charges made; the person making them being able to shelter himself behind his belief in their truth.   The thing published must be something in the nature of an answer, like an explanation or denial.   What is said must have some connection with the charge that is sought to be repelled.   The claim is made that anything which tends to induce a disbelief of the charge is privileged. · In support of this proposition, defendant's brief quotes the following:

" 'In some cases, so we have seen, the plaintiff's conduct towards the defendant may be a bar to the action.  If the plaintiff has attacked the defendant in the newspaper, and the defendant replies without undue personality, and without wandering into extraneous matters, then such reply, if made honestly in self-defense, is privileged.'  Odgers, Libel & S. 306.  'Every man has a right to defend his character against false aspersion.  It may be said that this is

one of the duties which he owes to himself and to his family. Therefore communications made in fair self-defense are privileged. If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, where such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me.' Id. 228.

"In this it is observable that the rule limits the privilege to retorts which are 'necessary to the defense, or fairly arise out of the charges made.'"

The discussion in that case is so full and complete, and the collation of authorities so ample, we cannot do better than simply refer to it.

The judgment is reversed, and a new trial ordered

The other Justices concurred.