SCHATTLER *v.* DAILY HERALD CO.

1. LIBEL AND SLANDER—BURDEN OF PROOF.

It is error, in an action of libel for publishing a charge that plaintiff stole a purse, to instruct the jury that the burden of proof was on the plaintiff to show the false and defamatory character of the words.

2. SAME—WORDS ACTIONABLE PER SE.

Words charging a person with larceny are libelous *per se.*

3. SAME—DAMAGES.

Without proof of injury from the words, the plaintiff was entitled to recover the actual damages to his reputation and feelings which the law presumes will flow from the commission of the act.

4. SAME—TRIAL—INSTRUCTIONS TO JURY.

Error committed in charging the jury was not corrected by recalling them after they had deliberated two and a half hours, reading the detached paragraphs in question and rereading them in modified form.

5. SAME—EVIDENCE—VERBAL ACT.

Testimony of a conversation between the plaintiff and his wife concerning the purse, which was found by her on a train; the talk occurring after he met her and they were going from the station to the post office, was competent as a verbal act to show his intent.

6. SAME—EVIDENCE—CRIMINAL LAW.

That the prosecutor dropped the criminal case against plaintiff because of the latter's ill health was not competent evidence.

7. SAME—INTENT.

Conversations of plaintiff and his wife with third persons, tending to show their intent, should have been received in evidence.

8. SAME—REPUTATION—JOINT LIBELS.

Articles published in another local paper, having a similar slanderous effect, could not be received in evidence to mitigate the damages, or for any other purpose.

9. SAME—GOOD FAITH AS DEFENSE.

Good faith in the publication of a libelous charge in no way affects the defendant's liability to compensate the plaintiff for his actual damages to reputation or feelings.

10. SAME—MALICE—DAMAGES.

Actual damages may be increased by reason of malice of the defendant, on the theory that the injury to the feelings is greater from a wrong wantonly inflicted than from a wrong done in good faith.

11. SAME—CONSPIRACY—LARCENY.

Plaintiff could only be guilty of larceny if he himself formed an intent to feloniously appropriate the purse, or aided and abetted his wife in so appropriating it, after she had communicated to him her intent to do so, and a secret resolve on her part, inferable from conduct or words, would have no tendency to establish his guilt.

12. TRIAL—CHARGE—REQUESTS FOR INSTRUCTIONS TO JURY.

Error assigned on the refusal of requests to charge the jury, which are covered by the general charge of the court, does not warrant a reversal.

Error to St. Clair; Tappan, J. Submitted April 12, 1910. (Docket No. 68.) Decided July 14, 1910.

Case by John Schattler against the Daily Herald Company for libel. A judgment for defendant is reviewed by plaintiff on writ of error. Reversed.

*Elmer E. Stockwell* and *Frank R. Schell*, for appellant.

*S. A. Graham* and *Walsh & Walsh*, for appellee.

This is an action of libel. On May 8, 1907, defendant published an article concerning plaintiff as follows:

## "DIAMOND THIEF IS NABBED THROUGH THE MEDIUM OF A DAILY HERALD LINER AD.

"For the Munificent Sum of Thirty-Four Cents, Port Huron Woman Recovers $300 Worth of Jewelry.

"She Left Her Purse on the Train, Woman in Rear Seat Found It, and Gave It to Her Husband to Get the Reward.

"'Lock me up. I am guilty of the theft and not my husband. Release him and I'll take the blame.' Statement made to the officers this morning by Mrs. John Schuttle.

"The merits of the Daily Herald liner ads. have been heralded throughout the city and country, but never before has this well-known column played in the role of a detective, landing his prisoner and placing him safely behind prison bars. However, it did this Tuesday and today John Schuttle, who fell into the hands of the Herald's sleuth, is posing in a cell at the county jail.

### "How It Came About.

"Last Friday Mr. and Mrs. Timothy O'Brien, Erie St., this city, were returning home on a Pere Marquette train. Mrs. Schuttle and child, wife of the prisoner, were seated directly behind Mr. and Mrs. O'Brien. When the train arrived in Port Huron, Mrs. O'Brien got up and left the train. Upon her arrival home, she discovered that her pocketbook, containing six gold rings, three of them set with diamonds, had been left behind. It dawned upon Mr. O'Brien that a liner in the Daily Herald might bring back the lost articles, and he inserted an ad. a day later. He was right. Tuesday morning, a man, well-dressed, and of medium build, appeared at the Herald office with the purse, inquiring for the reward offered for its return.

### "He Was Foxy.

"It was necessary for Mr. O'Brien to identify the pocketbook, and the office girl immediately telephoned him. The stranger became suspicious and left, saying that he would return later—but, he didn't intend to, evidently, for he had started for the railway station. Capt. Kerwin of the police department was called, and from a

description of the person, furnished by the office staff of the Herald, the alleged thief was rounded up shortly after noon.

### "He Denied All.

"Schuttle, when taken to the police station, denied having any connection with the theft, but when the question of a reward being offered for the return of the property was advanced by the officer, Schuttle willingly turned over the pocketbook and waited patiently for his share. He was locked up and a warrant for grand larceny issued.

### "Tip to Others.

"Such is the story of the detective secretly hidden in the sanctum ·of the Daily Herald liner columns, which cleared up a mystery, was the medium of returning several articles of jewelry, which in the least were valued at $400, and landed a thief in jail. The ad. cost Mrs. O'Brien 34 cents."

Which said libel means and charges the plaintiff herein with being a diamond thief, and being a thief; with having committed a felony by stealing a pocketbook containing $300 worth of jewelry, and also means and charges and insinuates that plaintiff stole said pocketbook and its contents for the purpose of getting a reward for returning it to its owner, and that he kept it and attempted by subterfuge, evasion, artifice, and deception to retain possession of the said pocketbook and its contents, until he should receive his "share" of the reward offered for its return, and that he only surrendered possession of said pocketbook when the officer intimated that he should receive his "share" of the reward.

It appears that plaintiff is a farmer, 27 years of age, and his wife, 23. They lived with the wife's mother, who was Pere Marquette railroad station agent and postmistress at Abbotsford. On May 3, 1907, plaintiff was visiting in Port Huron. His wife on that day went from Abbotsford to Port Huron, arriving on the 11 o'clock a. m. train. The seat in front of her upon the train was occupied by a man, woman, and child, strangers to Mrs.

Schattler. On leaving the train at Port Huron, Mrs. Schattler noticed a pocketbook lying in the seat in front of her, and took possession of it. On the platform she met her husband, the plaintiff, and together they claim to have made a search upon the platform, in the depot, and on the street to the post office for the owner of the purse. They did not find the owner, and then went to the home of Mrs. Shannon, plaintiff's sister. There the purse was examined by plaintiff's wife in his presence, and was found to contain some rings, and some change. The wife there told Mrs. Shannon about the pocketbook, but was not permitted to testify to what she said, nor to the conversation between herself and the plaintiff about the purse, upon the street, on the way from the station to the post office.

The next day plaintiff and his wife returned to Abbotsford. At the depot in Port Huron a police officer named Kerwin, in plain clothes, interrogated Mrs. Schattler about the purse, at which time she denied having found it, for the reason, she claims, that she did not know the man, or whether he had any more right to it than she had. Arrived at Abbotsford, she delivered the purse to her mother, who put it away. This occurred on Saturday. On the following Monday evening, plaintiff, his wife, and Mrs. Westbrook learned to whom the purse belonged, by reading the advertisement in the defendant's newspaper. The next morning, May 7, Mrs. Schattler delivered the purse with its contents intact to the plaintiff, who immediately took the same to the office of defendant, and delivered it to a young lady in charge of the office. She told him she thought there was a reward offered, whereupon plaintiff said he would return in a little while. He left the office, went to a barber shop to be shaved, and then went out on Military street and watched the driving of some spiles. While standing there, Officer Kerwin approached him, and inquired if he had left a purse at the Daily Herald office. Plaintiff answered, "Yes." Kerwin then asked him where he got it, and he replied that he

found it at the Pere Marquette depot. Plaintiff claims to have made this statement to the officer, because he then knew him to be an officer, and recognized him as the same man who had questioned his wife the preceding Saturday, and he did not want to have her caught in a lie. Thereupon Kerwin arrested plaintiff, and a warrant was issued charging him with larceny. The next morning, the 8th, bail was fixed at $200, which was furnished, and the examination set for May 10th; on May 10th the examination was adjourned to May 17th, upon which day the case was nolle prossed on motion of the assistant prosecuting attorney. On May 18th, plaintiff demanded that a retraction of the article complained of be published. This defendant refused. Suit having been brought by plaintiff, defendant, under its plea of the general issue, gave notice of justification.

A verdict was rendered in favor of defendant, and judgment entered thereon. Plaintiff has removed the case to this court by writ of error.

BROOKE, J. (*after stating the facts*). Plaintiff assigns error upon the charge of the court, which was in part as follows:

" With reference to the claims of the parties, you are instructed that the burden is upon the plaintiff to convince you by a fair preponderance of evidence that the words complained of were false, in fact, and defamatory in character.

" To recover actual damages he must also convince you by a fair preponderance of the evidence that the plaintiff has suffered injury to his good name, health, feelings, and that those injuries resulted directly from the publication of the article in the Herald of May 8th, 1907. * * *

" You are instructed that libel is a malicious defamation expressed in writing or printing, tending to impeach the honesty, integrity, or reputation of another.

" You are also instructed that printed words, falsely charging another with the commission of larceny, are actionable *per se*. That is, if it appears from the whole record that the words complained of charge plaintiff with being a thief or with committing larceny of the purse and

property in question, and that such charge is false in fact and wholly unjustified by the defendant, then the law presumes that he has suffered at least nominal damages, that is to say, at least six cents damages.

"As I have explained to you, to determine whether larceny was in fact committed by Schattler and wife in securing possession of the pocketbook and contents, * * * Mrs. Schattler had a right to take possession of the property to return it to Mrs. O'Brien, if she found her, and if she did not find her, then she had a right to turn it over to the conductor in charge of the train or the station agent.

" It is shown by undisputed evidence, that the conductor was present, and aided in the search for the property within five minutes from the time it had been left. Mrs. Schattler knew where he was.

" If she made search for Mrs. O'Brien, and could not find her, it was her duty to turn the property over to the conductor or the agent.

" She would not be a trespasser in taking charge of the property and turning it over to either of these, but when she failed to do this, and took the property away from the place where Mrs. O'Brien would have recovered it, taking it entirely away from the train and away from the conductor or agent, she then became a trespasser.

" Now, gentlemen, this is all-important as bearing upon the question as to when the intent to appropriate the property was formed. Under such circumstances as shown by the evidence, if you find that Mrs. Schattler took the property off the seat and off the train with an honest intention to find the owner, and took it away with that purpose and without any intention to commit larceny at the time when she took it away to convert it to her own use, but at some subsequent time formed the intention to keep the property as her own, she would become guilty of larceny at the time she formed the intention to appropriate the property, if she did so, whenever that time might have been.

"You are further instructed, that by virtue of the statutes in this State, there is no distinction between principals and accessories in the commission of crime. That is to say, if one aids, abets, or in any manner directly takes part in the commission of the offense of larceny, even though he does not actually take the goods into custody himself, he becomes equally guilty with the principal.

"If in this case you are convinced by a fair preponderance of the evidence, that Mrs. Schattler committed the crime of larceny, and you also find by a fair preponderance of evidence that her husband, the plaintiff, aided and abetted the commission of the crime, and aided in the concealment of the facts in keeping the property away from the owner when she was asked to return it, then you should find that he was an accessory and equally guilty with his wife, whether he ever took the property into his possession at all or not.

"Of course you will understand that it is for you to determine the facts as to the conduct of the parties, and whether their conduct amounts to larceny under all the facts.   In doing this you will determine the facts in accordance with these principles of law which I give you.

"As an essential element of the crime of larceny, and the aiding and abetting thereof, an intent on the part of Mrs. Schattler and her husband to commit these acts must appear.

"What their actual intent was, you are to determine from the facts and circumstances, and what they did and said in connection with the property.

"You are also instructed, that if you believe from all the proofs, that Mrs. Schattler took possession of the property with an honest intention, and continued to hold it with honest intent to return it to the owner, and that her husband never formed an intent to aid her and keep the property away from the owner by concealing their possession of it, then neither would be guilty of larceny.   But it is impossible to reach the recesses of the human mind to ascertain the true intent; you can only determine what it is by conduct.

"You are to consider what these people did in their attempts to find Mrs. O'Brien, or their failure to attempt to find her.   Take into consideration their statements to the officers and others, their attempts in returning the property, and if from all of these, you determine that at any time Mrs. Schattler conceived the intent to retain this property as her own, and that Schattler aided and abetted her, as I have explained, then the truth of the defendant's charge, that Schattler was a thief, is established.   *   *   *

"If, as a matter of fact, you shall find the defendant has not shown that it was justified in using false and defamatory language, the effect of the request to retract, the other articles in the Daily Herald and the language in

the article itself pertaining to the reward are to be considered to determine the degree of malice accompanying the publication of the false and defamatory statements, if they were such. Of course, if you determine as a fact that defendant under the circumstances, as they appear from the proofs, had a right to use the language complained of, all questions of malice and the effect of the notice to retract, and the other publications are wholly eliminated from the case. If the defendant was justified in printing what was printed, it is immaterial what the motives were which prompted the publication.  *  *  *

"As I have explained, if the charges in substance, that the defendant was a thief, were not justified and were in fact false, then the law presumes that damages have resulted.

· "General damages will follow in such a case, and they are those damages which the law will presume to be natural and probable consequences of the defamatory words as are shown in the proof connected with the effect that they may have had, if any, upon the plaintiff's character, health and feelings.  *  *  *  And in connection with the question of actual damages, you are to consider whether or not the charges made in the language were maliciously used, and if so, you may consider this fact as an element in awarding the actual damages.

"In connection with this question of damages, you are also instructed, that if the defendant has failed to fully justify the publication of the language complained of, yet you may take defendant's good faith into consideration in mitigation of damages.

"That is to say, if the circumstances attending the loss of the pocketbook, and the conduct of Schattler and his wife, and the arrest of the plaintiff by the officers, all furnished such information as to give a reasonably prudent man a reason for actually concluding that the parties were guilty as charged in the article of May 8th, then this is to be regarded by you as evidence of good faith on the part of the defendant.

"If you find the defendant acted in good faith in applying the word 'thief' and like allegations of that character, and under the circumstances, honestly believing that he was in fact a thief, then you should consider these facts in the matter of mitigating or lessening or diminishing the actual damages.

"It is a matter for your determination as to what ex-

tent mitigation may extend, even to the extent of diminishing damages to a mere nominal sum.

"Further in this connection with this question of damages, you are to take into consideration what effect, if any, the reading of the article of the Times had upon the plaintiff.

"Proof has been introduced to show that an article referring to the arrest and so forth contained in the Times was read to him before the article in the Daily Herald of May 8th had reached him. Evidence has also been given as to the effect that the article in the Daily Herald had upon the plaintiff's feelings and health.

"You are to take into consideration whether the facts set up in the article contained in the Times was a cause for such injuries as he complained of. If you find this to be a fact, that the article in the Times had a natural and probable effect upon his feelings and health as he now complains of, then this should be considered as a fact in determining whether the injuries complained of were actually traceable to the Daily Herald. *  *  *

"Now, as to your verdict. *First,* if you find that no justification has been shown by the defendant, then your verdict should be for the plaintiff, for at least nominal damages of six cents, or in such actual damages as the proofs and these instructions warrant. *Second,* if you find that defendant has justified the publication of the words complained of, as I have explained, then your verdict should be not guilty.

"If the intent to commit the larceny was once formed while the property was in the possession of the plaintiff or his wife, as I have explained, then the mere fact of the return of the property does not remove the fact that larceny was then committed; it would not cure it.

"*Mr. Schell:* It is my memory that our declaration does not aver injury to health as special damages in connection with what the court has said in regard to health. I think you should instruct the jury that they should take into consideration, that if this article had any injury or ill effect upon his health that the only damage they could award therefor would be such as could be awarded because of the injury, or the additional injury to his feelings on account of loss of his health.

"*The Court:* Well, strike out all reference to the health then, that is all there is to that.

"*Mr. Walsh:* I take an exception to this because of the

fact that the charge has been given before plaintiff's counsel wants it withdrawn.

"*The Court:* Counsel calls my attention to the claim that there is no claim of damages for direct injury to health; it is on their request I withdraw from your consideration all question of damages on account of injuries to health, leaving the rest of the charge as to the injury to feelings and reputation standing."

At 7:15, after being out 2½ hours, the jury returned into court by direction of the court, when the following took place:

"*The Court:* Gentlemen, I have recalled you for the purpose of correcting a statement I have inadvertently made to you in connection with the burden of proof. This is the section as I gave it to you·

"'With respect to the claims of the parties, you are instructed that the burden is upon the plaintiff to convince you by a fair preponderance of evidence that the words complained of were false in fact and defamatory in character.'

"You notice that I said that the plaintiff must show the defamatory words were false in fact and defamatory in character.

"I now say to you, that the words being actionable *per se*, they are presumed to be false. This has only to do with the question of the proof of those words.

"I correctly stated the rule in other portions of the charge.

"I also call your attention to another section of the charge, in which the same inadvertence appears. That is the section of the charge:

"'That is to say, if it appears from the whole record that the words complained of charges plaintiff with being a thief or with committing larceny of the purse and property in question, and that such charge is false in fact and wholly unjustified by the defendant, then the law presumes that he has suffered at least nominal damages, that is, at least six cents.'

"I intended that this should read as follows:

"'That is to say, that if it appears from the whole record that the words complained of charges plaintiff with being a thief or committing larceny of the purse and property in question, and that such charge is not justified by the defendant by proof of the truth

thereof by a fair preponderance of the evidence, then the law presumes that the plaintiff has suffered nominal damages, that is, at least six cents.'

"As I have explained, this change has solely to do with the burden of proof as to the truth or falsity of the words. It in no manner changes or affects the rules as to the defendant's justification or as to the rules and question of damages exactly as I have given them to you. All of the remaining rules and instructions I have given are to remain intact."

It will be noted that at the outset the jury were instructed that the burden of proof was upon the plaintiff to show that the words complained of were false in fact and defamatory in character, and that to recover actual damages for injury to reputation and feelings, such damages must be proven by plaintiff by a fair preponderance of the evidence. This statement is not the law in any particular. The words complained of charged the plaintiff with larceny. They were plainly libelous *per se*. They carried with them the presumption of their falsity, and unless proven true in substance and in fact by defendant, the plaintiff, without proof of injury, had a right to recover the actual damages to his reputation and feelings, which the law presumes will flow from the commission of the act. This erroneous impression of the rights and liabilities of the parties found lodgment in the minds of the jurors, and was not corrected during the entire charge. Two and one-half hours after retirement, the jurors were called into court, and an attempt made to cure the error by reading two detached paragraphs of the charge, and there rereading them in a modified form. We are of opinion that, so far from correcting the error made, the action of the court, in thus reading these two sections without the context, may well be supposed to have confused, rather than to have clarified, the minds of the jurors as to the plaintiff's rights.

The plaintiff offered to show the conversation between himself and his wife about the purse, on the way from the station to the post office, as a verbal act, bearing upon the

question of intent, and part of the *res gestœ.* We think this testimony was admissible. *Dunbar* v. *McGill,* 69 Mich. 297 (37 N. W. 285); *Wright* v. *State,* 10 Tex. App. 476; 3 Wigmore on Evidence, § 1772 *et seq.*

Testimony of the prosecuting attorney was admitted as to why the case against plaintiff was dropped; the plaintiff's ill health being assigned by him as the reason. This testimony was incompetent, and, in our opinion, prejudicial to plaintiff's rights, as it may well have caused the jury to believe that the officer had discontinued the case on account of the plaintiff's sickness, while still believing him to be guilty.

The important question for the determination of the jury, under the pleadings, was whether or not the plaintiff, at any time while the purse was in the possession of himself or his wife, had formed the *intent* to feloniously appropriate it to his own use, or to aid and abet his wife to so appropriate it. The jury were instructed to determine this intent "from the facts and circumstances, and what they did and said in connection with the property;" yet the court excluded testimony of what they said, not alone to each other, but to Mrs. Shannon. This testimony, likewise, should have been admitted.

The court admitted, over plaintiff's objection, evidence of the publication in the "Daily Times" of two articles concerning the arrest of plaintiff. The publications were made by the "Times" either contemporaneously with, or later than, the libel complained of. They were inadmissible for any purpose. See 25 Cyc. p. 506, and authorities there collected.

Particular attention is directed to the case of *Palmer* v. *Publishing Co.,* 31 App. Div. (N. Y.) 210 (52 N. Y. Supp. 539), and cases cited. There that court said:

"When several persons unite in the publication of one libel, a tort is committed by each one of them, for which he severally is liable to the plaintiff, and the plaintiff is entitled to a judgment against each one for all the damages which he suffers, by reason of the libel. 13 Am. &

Eng. Enc. Law (1st Ed.), p. 372. It is quite true, that he is entitled to but one satisfaction, and when one of the judgments has been paid, the collection of the others will be restrained. *Breslin* v. *Peck*, 38 Hun (N. Y.), 623. But until he has had one satisfaction, he is entitled to maintain as many actions for the same libel as there are defendants who have been engaged in publishing it. *A fortiori*, where a libel had been published against the plaintiff by different persons at different times, he is entitled, not only to pursue each publisher, but to recover whatever damages the jury may think that each publication may have caused him. Each libel is a separate and distinct tort, and each person who sees fit to publish it is separately liable to the plaintiff for whatever damages may be fairly said to accrue. If 100 persons at 100 different places make 100 separate publications of a libel in 100 different newspapers, the fact that this simultaneous action of all of them has ruined the plaintiff's character is no reason why one of them, when sued for it, should shelter himself behind the acts of the other 99, and say that 99/100 of the plaintiff's character was ruined by the others, and, therefore, he is liable for only 1/100 part of the damage. The true rule is, and must be, that whoever publishes a libel, publishes it at his peril, and he cannot mitigate his damages, because some other reckless or evil-disposed person has incurred the same liability that he has for the same story."

The charge of the court, to the effect that the good faith of defendant in using the word "thief" in the libel complained of, should, if found by the jury, be considered as mitigating the actual damages, is clearly erroneous. If defendant, under its plea of justification, failed to prove that plaintiff was a thief, then its good or bad faith in publishing the libel could have no possible bearing upon plaintiff's right to collect actual damages. *Whittemore* v. *Weiss*, 33 Mich. 348; *Austin* v. *Hyndman*, 119 Mich. 615 (78 N. W. 663); *Smurthwaite* v. *Publishing Co.*, 124 Mich. 377 (83 N. W. 116); 25 Cyc. pp. 372 and 420. Actual damages may be increased by reason of the malice of the defendant, because plaintiff's injury to feelings is greater when he suffers from a wrong wantonly inflicted, than when he suffers from one inflicted in good faith, but

in no case can defendant's good faith mitigate or lessen the damages to reputation or feelings, which plaintiff actually does suffer, as a result of the libelous publication. Obviously, plaintiff could only be guilty of larceny, if he himself formed the intent to feloniously appropriate the purse, or aided and abetted his wife in so appropriating it, after she had communicated to him her intent to do so. Her *secret* resolve to steal the purse and its contents, if inferable from her conduct and words, would have no tendency to prove guilt on the part of the plaintiff.

Voluminous requests to charge were tendered on behalf of the plaintiff. These were disregarded by the court, but covered in part by the general charge. So far as they correctly stated the law, and were so covered, there is no error. *In re Morse's Estate,* 146 Mich. 463 (109 N. W. 858). We are, however, clearly of the opinion, that, taken as a whole, the charge failed to clearly and fairly present to the jury the conflicting claims of the parties and the legal principles applicable thereto.

For the errors pointed out the judgment is reversed, and a new trial ordered.

OSTRANDER, MOORE, and McALVAY, JJ., concurred.

HOOKER, J. I concur in the reversal of this cause on all grounds but one. I am not certain that the testimony of the prosecuting attorney was not properly admitted.